## SUFFOLK COUNTY.

### Horace L. Hazelton *vs.* Lawson Valentine.

A surety upon an administrator's bond of which there has been a breach, by becoming himself administrator, by indorsing upon the bond a receipt for the amount due thereon as money received from himself as surety, and by charging himself with the same in his inventory, relieves the first administrator from his liability to the estate, and can main- tain against him an action for money paid for his use.

Tort. Writ dated September 15, 1870. The declaration al- leged that the defendant, designing and maliciously intending to injure the plaintiff, and to cause him to be arrested and impris- oned, maliciously sued out a writ from the Supreme Court of New Brunswick, and maliciously made oath that the plaintiff owed him $25,000, for money by him paid for the use and at the re-

quest of the plaintiff, and July 18, 1866, caused the plaintiff to be arrested on the writ, and imprisoned in the common jail, in the city and county of St. John, in the Province of New Brunswick, and detained him in close confinement till July 25, until he could procure bail, the defendant knowing that he had not paid out any money for the plaintiff, and that the plaintiff was not indebted to him ; that the defendant procured one Leland Fairbanks, Jr., to testify, at the trial of the suit, that by the law of Massachusetts an action for money paid would lie in behalf of the defendant against the plaintiff, the defendant knowing that such action could not be maintained by that law ; that the defendant, by means of this testimony, recovered a judgment and execution against the plaintiff for $25,000 and costs; that the plaintiff was, February 22, 1868, surrendered by his bail, and imprisoned in jail on the execution till April 7, 1870.

The answer alleged that in 1866 the defendant honestly believed that he had, and in fact did have, a legal demand for money paid by him for the use of the plaintiff, to an amount exceeding $25,000 ; that he consulted gentlemen learned in the law, and was advised that his demand was a legal one, and that it should be put in suit ; that relying upon this advice, he sued out a writ from the Supreme Court of the Province of New Brunswick to recover it , that his counsel made the affidavit there required by law to hold the plaintiff to bail, and that the plaintiff was thereupon arrested and imprisoned until he gave bail ; that the writ was duly entered in court, and was tried before a jury, who, upon the testimony of honest and truthful men, submitted to them by the defendant, returned a verdict for $25,000 against the plaintiff ; that thereupon judgment was rendered and execution issued, and the plaintiff lawfully imprisoned on the execution ; that the court before whom the action was tried had full and complete jurisdiction in the premises ; and that all that was done was done by due process of law.

At the trial in this court, before *Morton*, J., it appeared in evidence that January 6, 1863, the plaintiff was appointed by the Probate Court of Middlesex County administrator with the will annexed of one Charles Valentine, the father of the defendant ,

that the plaintiff gave a bond for $70,000, the condition of which was that he should return within three months an inventory; that he should administer according to law, and should render an account within a year; that upon this bond the defendant and the defendant's brother Henry Valentine were the plaintiff's sureties, that the plaintiff was a lawyer, a near neighbor of the defendant, and went to the same church with him: that the plaintiff accepted the office of administrator at the defendant's request; that the plaintiff, after repeated requests by the defendant to render an account, finally at the request of the defendant resigned the trust January 6, 1866, and filed an account, the only account filed by him as administrator, which account showed a balance in his hands of over $40,000; that the account was allowed; that no other order or decree had been made in the premises; that the balance due the estate by plaintiff had not been paid; that the defendant was appointed to succeed the plaintiff as administrator January 6, 1866, and gave bonds; that July 18, 1866, the plaintiff was arrested in New Brunswick, while temporarily there, upon a *capias*; and that the affidavit required by the law of New Brunswick to authorize an arrest, was signed and sworn to by Leland Fairbanks, Jr., Esq.

The answers of the defendant to interrogatories propounded by the plaintiff were read. These showed that the defendant employed Fairbanks, who was the husband of the defendant's sister and a practising lawyer in New York but had not practised in Massachusetts, to go as his counsel to St. John in relation to the plaintiff's arrest; that sometime after the judgment was recovered, the defendant had assigned it to Samuel R. Thompson of St. John, his counsel in the suit. The defendant further stated in his answers, "I am not aware that as surety for the plaintiff I had before July 9, 1866, paid out any money, except in a way I have heard designated by counsel as payment by operation of law."

The defendant was called by the plaintiff, and examined as a witness. He testified that he employed Fairbanks as his counsel that Fairbanks acted for him, and that he acted in pursuance of Fairbanks's advice; that Fairbanks went to New Brunswick

as his agent; that Fairbanks knew all the facts, and was inter-
ested in the estate through his wife; that he, the defendant, had
also consulted with Sohier & Welch, attorneys, or with one of
them, but could not remember whether it was before or after the
commencement of the suit, or what facts he told them, or what
advice they gave him; that he expected to try his case as his
counsel advised, and that he had no consultation with Fairbanks
as to how he should prove his case; that he did not talk with
Fairbanks as to what he should testify or do in the case; that he
left the whole matter of the suit with his counsel, and that he had
no special knowledge of the case, and did not know who the wit-
nesses were to be. He stated that whatever Fairbanks had done
he had ratified. He also stated that he had paid the $25,000 by
operation of law, as he was informed by his counsel, and that he
was generally so advised. On cross-examination he testified that
while the plaintiff was administrator, he was trying to get some
statement relating to the estate from him for two or three years;
that for a little over a year he was trying to get an account, and
that he could not get a word from him; that $60,000 or $70,000
came to the plaintiff as administrator. He also stated that he
never had any doubt that he had a legal claim against the plain-
tiff, or that he had a right to bring suit against him in the courts
of New Brunswick, or that Fairbanks did what was proper in the
matter.

The account of the plaintiff as administrator was put in evi-
dence, and also the inventory of the estate, filed by the defendant,
by which it appeared that he had charged himself with $25,000;
and it also appeared that he had, July 6, 1866, indorsed upon the
plaintiff's bond a receipt, signed by himself as administrator, for
$25,000 as paid by himself as surety.

The plaintiff offered evidence that while he was in custody the
defendant said that he intended to keep him in confinement until
he made restitution, that he meant to keep him there as long as
he could; that at the trial of the original suit in New Brunswick,
Fairbanks was called as a witness by the defendant's counsel,
and he offered to show what Fairbanks's testimony was.

The defendant objected to the admission of this testimony, but
the court admitted it, *de bene esse.*

Mr. Jack, who was the plaintiff's counsel at the trial in New Brunswick, testified, that Fairbanks at that trial swore that when a surety upon an administrator's bond was appointed administrator, his debt to the estate was paid to himself, and that the action then before the court could be maintained by the laws of Massachusetts ; and that his statement as to the law of Massachusetts was a volunteer statement. On cross-examination Mr. Jack said : " I think Fairbanks did not say anything about the law of Massachusetts until I began to cross-examine him. When I examined him he referred to some Massachusetts authorities on the table ; said that there had never been such an action in Massachusetts ; it was a statement of what the law of Massachusetts was. He referred to it while on cross-examination, but not in answer to any question put by me. Part of my argument before the whole court was, that it was the mere opinion of witnesses at the trial that such was the law."

There was evidence tending to show that Fairbanks, at the time of the arrest of the plaintiff upon the *capias*, was at St. John, and that he entered his name upon the register of the Park Hotel at St. John as " Wm. Kingston," and that of a sister of defendant, who accompanied him, as " Miss Kingston ; " that at another time he declined to register his name when requested ; that he described the plaintiff to the officer who held the *capias* to arrest him, as a very bad man, who was tricky and would slip through his fingers if he did not watch him closely ; that he had inquired how the plaintiff was getting along, and told the officer not to make his confinement a pleasure to him.

It was admitted that the court in New Brunswick was the highest court of judicature in the Province ; that it had jurisdiction of the parties and of the cause of action ; that the common law of England prevailed in New Brunswick, except as modified by statute, and there was no evidence of any modification.

Upon the foregoing evidence the court ruled, *pro formâ*, that the plaintiff could not maintain the action, and directed a verdict for the defendant, and reported the case for the determination of the full court.

*R. D. Smith*, for the plaintiff.

*T. H. Sweetser & W. S. Gardner*, for the defendant.

ENDICOTT, J.*   It appears from the report that the plaintiff was appointed, January 6, 1863, by the Probate Court for the county of Middlesex, administrator, with the will annexed, of the estate of Charles Valentine.   He gave bond as administrator with the defendant and his brother Henry Valentine as sureties.   He filed an inventory, but failed to render any account until January 6, 1866.   He then resigned his trust, and filed an account by which it appears that he had in his hands as administrator a balance of forty-one thousand eight hundred and sixty-eight dollars.   On the same day, the defendant was appointed administrator *de bonis non*, and gave bonds.   This balance the plaintiff did not pay over to the defendant upon his appointment, and has never paid.

The defendant, assuming that there was a breach of the bond, and that his own indebtedness thereon became assets in his hands as administrator, on July 9, 1866, indorsed as administrator upon the bond, which was in the probate office, the receipt of twenty-five thousand dollars from himself ; and to that extent discharged himself as surety on the bond, but no farther.   He afterwards returned an inventory, including this sum as cash received from himself on the bond.

The plaintiff, while temporarily residing at St. John, in the Province of New Brunswick, was arrested July 18, 1866, on a *capias* issued by the Supreme Court of that Province, on a writ sued out by the defendant, to recover twenty-five thousand dollars paid by him for the use of the plaintiff.   The plaintiff was under arrest for six days, when he obtained bail.   The arrest was made upon the affidavit of one Fairbanks acting in behalf of the defendant.   It is not denied that this proceeding was in due form under the laws of New Brunswick, and the report finds that the court had jurisdiction of the parties and of the cause of action.

The case was tried before a jury.   The only question at issue, apparently, between the parties at the trial was, whether the action could be maintained under the law of Massachusetts, upon the ground that the amount for which a surety is liable to an

* This and the four following cases were argued in March, 1873.

estate is to be considered as paid by operation of law on the appointment of the surety as administrator, and to become assets of the estate in his hands.   In accordance with the usual practice when the law of a foreign country is in dispute, the defendant offered evidence, as on any other question of fact, that such was the law in Massachusetts. *Haven* v. *Foster*, 9 Pick. 112, 130. *Knapp* v. *Abell*, 10 Allen, 485.   *Kline* v. *Baker*, 99 Mass. 253. *Godard* v. *Gray*, L. R. 6 Q. B. 139.   The plaintiff did not attempt to control this evidence, but consented to a verdict for the full sum of twenty-five thousand dollars, with leave to move to enter a nonsuit, on the ground that it was not proved that by the law of Massachusetts the action would lie.   The motion was heard before the full court, a rule refused, and judgment entered on the verdict. *Valentine* v. *Hazelton*, 1 Hannay, 110.   Upon that judgment an execution issued, upon which the plaintiff was arrested. The judgment has never been set aside by the court, and is now binding and conclusive between the parties. *Barrow* v. *West*, 23 Pick. 270.

The plaintiff now brings this action of tort for false imprisonment upon the *capias* and upon the execution, alleging the writ and the *capias* to have been an abuse of legal process, and founded on false and malicious evidence procured by the defendant.   He contends that the gist of the action is, that the defendant, by the abuse of the process of a foreign court, succeeded in getting out a *capias*, and afterwards obtained a judgment, upon which he has been falsely imprisoned.

In the view taken by us of this case, it is unnecessary to consider many of the questions raised upon the report and argued at the bar.   The law of Massachusetts was proved in the court at New Brunswick as a fact; the court had jurisdiction, and the plaintiff was heard, or had an opportunity to be heard, on that question.

A forcible argument has been addressed to us, that the judgment thus obtained is a complete answer to this action, irrespective of the question, whether the law of Massachusetts was or was not correctly proved.   But as we are of opinion that the arrest on the *capias* was not obtained on an affidavit falsely alleg

Hazelton *v.* Valentine.

ing that the defendant owed the plaintiff twenty-five thousand dollars; and that the evidence produced at the trial as to the law of Massachusetts was not false; it is sufficient to rest the decision upon that ground.

It was in evidence at the trial at New Brunswick that the plaintiff had not conducted himself faithfully in the discharge of his duties as administrator; that a large amount of property came into his hands, which he had failed to administer; that the parties interested in the estate succeeded with much difficulty in getting him to file in the Probate Court an account which established the fact that over forty thousand dollars was in his hands unaccounted for, which sum he was unwilling or unable to pay over, whereby the administration bond became forfeited. And it does not appear in the report of that case, that it was denied that there had been a breach of the bond. He thereupon resigned his office, and the defendant, a surety on the bond so forfeited, was appointed his successor.

There having been a breach in the condition of the bond, it could have been put in suit at once, and the sureties could have been held to the full amount of the ascertained debt of the plaintiff to the estate.

In an ordinary case, where a principal makes default in the payment of the debt or the performance of the contract, the surety need not wait for suit to be brought, but may, as soon as the liability arises, pay and discharge the debt. It is not necessary to obtain leave of the principal; the law implies a request to the surety to do this in behalf of his principal. The money thus paid is paid for the use of the principal, and the surety may maintain an action for it. *Appleton* v. *Bascom*, 3 Met. 169. Addison on Contracts, 671. *Lidderdale* v. *Robinson*, 2 Brock. 159. *Pitt* v. *Purssord*, 8 M. & W. 538.

Nor is there any different rule to be applied where the obligation of principal and surety arises upon a probate bond, given according to our practice to the judge of probate for the faithful performance of duty as executor or administrator. The surety on such bond may, when the liability arises, pay over to the estate, or to the successor of his principal, if one has been appointed, the

amount that is due from the principal, without suit being brought, or any order of the Probate Court directing suit to be brought, or payment to be made. If the defendant had not been appointed administrator, he would have had the right so to discharge his liability. *Appleton* v. *Bascom, ubi supra.* Having been ap pointed, the well settled rule applies to him, that the debt which the executor or administrator owes the estate becomes assets in his hands, to be accounted for and adjusted in his probate account as assets actually realized. The defendant was entitled to receive as administrator the whole balance in the hands of the plaintiff, and to enforce its payment; and was himself liable to the estate for it as a surety upon the bond. By the indorsement on the bond he discharged that liability to the estate to the amount of $25,000, but no farther. He also charged himself with that sum in his inventory. He thus discharged the plaintiff to the extent of $25,000 from his liability to the estate, but not from his liability to him ; and as the indorsement on the bond was in legal effect a payment, the plaintiff was clearly liable to him as for money paid to his use. It was held in *Ipswich Manufacturing Co.* v. *Story,* 5 Met. 310, that where one who had mortgaged land to secure a debt due on a bond, was appointed administrator of the estate of the mortgagee, and had included in his inventory, and in his subsequent accounts, the debt due from himself on the bond, that the debt on the bond was paid ; and that a subsequent assignment of the bond and mortgage by the administrator transferred to the assignee no interest in the land. Chief Justice Shaw, in commenting on the rule, says : "It proceeds upon the ground, that when the same hand is to pay and receive money, that which the law requires to be done shall be deemed to be done, and therefore that such debts due from the administrator shall be assets *de facto* to be accounted for in probate account. Such presumption would arise from the mere taking of administration. But it is greatly strengthened when the administrator enters the debt in the inventory, as a debt due from himself to the estate, charges himself with it in account, and assents to a decree by which it is ordered to be distributed as money. It is a clear indication and authoritative declaration of his intent to regard it

as assets and treat it as a debt collected. It is in truth the only mode in which payment could be made. Nothing, perhaps, short of the actual cancelling of the bond, could be a stronger or a more authoritative and official declaration of the fact that the debt due from himself is henceforth to be regarded as assets received, equivalent to the actual collection of a debt due from a third person to the estate." See *Stevens* v. *Gaylord*, 11 Mass. 256 ; *Ela* v. *Edwards*, 16 Gray, 91.

The defendant having made the indorsement on the bond, and having included the amount in his inventory, must account for the same in his probate accounts, and distribute it according to law. If he failed to do this, the sureties on his bond would become liable.

It therefore follows, that the defendant, having become liable to the estate by the plaintiff's breach of his bond, had the right to discharge that liability, and that, by reason of his becoming administrator, and by force of his acts while in the performance of his duties, there was a legal satisfaction and extinguishment of the liability to the estate on the bond to the amount of $25,000, which was in law a payment. That being a payment made by him as surety on the bond of the plaintiff, he was entitled by our law to recover from the plaintiff that sum, and that is all he sought to recover by the proceedings in New Brunswick.

*Judgment on the verdict.*