JAMES O. CURTIS & another *vs.* GEORGE W. BANKER.

Suffolk. Nov. 14, 1883. — Jan. 22, 1884. C. ALLEN & HOLMES, JJ., absent.

B. executed a bond to A. conditioned to reimburse to A. a certain proportion of such sum as A. might be compelled to pay " to the treasurer or attorney of the United States," by reason of the liabilities to be assumed by A. as surety of H. for the faithful performance of his duties as additional paymaster, to which he had been appointed. The instrument provided that the bond given by H. and A., when executed, was to be taken "as part of these presents for knowledge of the contents thereof." H. as principal and A. as surety subsequently gave a bond to "the United States or their certain attorney," conditioned not only for the faithful performance by H. of the duties of his office, but to regularly account for moneys received by him as paymaster, and to refund any public moneys unaccounted for. *Held*, that these differences in the language of the two bonds did not affect the liability of B. to A., if there was a breach of the bond given by A. as surety to the United States.

B. executed a bond to A. conditioned to reimburse to A. a certain proportion of such sum as A. might be compelled to pay to the United States by reason of the liabilities to be assumed by A. as surety of H. A bond was afterwards executed to the United States, by H. as principal and by A. as surety, for the faithful performance by H. of the duties of his office. A default on the part of H. afterwards took place, and the United States after his death, without making any demand on his representatives, brought an action against A. This action was continued for several years to allow A. to apply to the Court of Claims for relief. This relief was refused by that court. A. then consented to a default, and judgment was rendered against him for a certain amount, with interest from the date of the writ, and costs. The United States then sued out a writ of error, claiming to be entitled to interest from the time of the breach by H.; and A. sued out a writ of error, claiming to be liable only for nominal damages. The judgment rendered below was affirmed by the Supreme Court of the United States. A. paid the judgment, and brought an action against B. on the bond executed by him. *Held*, that, although no notice had been given to B. of the action brought against A., B. was liable, not only for his proportionate part of the principal sum, but also for his proportion of the interest and costs paid by A., if A. in resisting the action against him had acted with good faith and with due diligence.

DEVENS, J. The plaintiffs, who were sureties on the official bond of Oliver Holman, late an additional paymaster in the army of the United States, having been compelled to pay to the United States certain sums due from him for moneys received by him and not accounted for, together with interest thereon, bring this action against the defendant, who is one of seventeen persons who had executed to them a subsidiary bond, by which they severally promised to reimburse, each in the proportion which one thousand bears to twenty thousand, but not exceeding

one thousand dollars for each, such sums as the plaintiffs might be "compelled to pay to the treasurer or attorney of the United States" "by reason of the liabilities assumed by them or to be assumed by them," as sureties of Holman "for the faithful discharge of his duties" as additional paymaster, to which office he had then been appointed and confirmed.

The defendant objects that the bond actually signed by the plaintiffs differed from that against the liabilities on which the defendant promised to indemnify them, in various respects; that it was contemplated by the subsidiary bond that the official bond should be to the "treasurer or attorney of the United States," whereas it was given to "the United States of North America or their certain attorney;" that it was to be "conditioned for the faithful discharge of his duties" by Holman, whereas it was given not only for this, but to "regularly account, when thereunto required, for all moneys received by him from time to time as paymaster," and "to refund, at any time, when thereunto required, any public moneys remaining in his hands unaccounted for."

To these, and other objections of a similarly technical character, it may fairly be answered that the bond of the defendant does not undertake to describe with minute accuracy the phraseology and conditions of the bond to be signed by the plaintiffs. It clearly identifies the official bond required to be given by Holman in order that he might be qualified to enter upon his duties as paymaster, and if it was such a bond as the law requires for that purpose, of which there is apparently no question, it cannot be doubted that it is against the liabilities incurred thereby that the defendant has agreed to indemnify the plaintiffs. The bond given by the defendant expressly provides that the bond given by Holman and the plaintiffs, "when executed, is to be taken as part of these presents for knowledge of the contents thereof."

Holman died in February, 1872, and on October 15, 1872, the United States brought an action against these plaintiffs and the third obligor, Hall, now deceased, on the bond signed by them, by writ returnable to the Circuit Court of the United States to be holden on May 15, 1873, claiming, with interest thereon from November 30, 1865, a deficit of $3320.02, the same being shown

to be due on that date to the United States by the examination made, and account as rendered, by the proper accounting officers of the United States. The sum due from Holman was shown by transcripts from the books of the treasury department, duly certified and authenticated. In any suit brought in case of the delinquency of any officer accountable for the public money, such transcripts are admissible in evidence, and the court trying the cause is authorized to grant judgment and award execution accordingly. U. S. Sts. of March 3, 1797, § 2; March 3, 1817, § 11. U. S. Rev. Sts. §§ 886, 887. There is no suggestion that in any way this account, as rendered by the treasury department, could have been controlled, or that, if other steps have been properly taken against the plaintiffs, they were not liable for the amount of $3320.02.

The case against the plaintiffs was continued, on their motion, until March, 1876; and, in the interval, application was made to the United States Court of Claims for relief by the plaintiffs as Holman's sureties, in the name of Holman's administrator, but in their interest and at their expense. By reference to this case in 11 Ct. of Cl. 642, (the facts found in which are made a part of the case at bar,) it will be seen that the principal portion of the deficit, perhaps the whole, had occurred by the embezzlement of funds by a subordinate of Holman, and that relief was refused upon the ground that Holman had himself been guilty of negligence in committing the funds to the custody of such subordinate. Relief having been refused by the Court of Claims, the defendants afterwards, in the Circuit Court, consented to a default, and judgment was rendered against them for the sum of $3320, with interest from the date of the writ, and costs. Writs of error were taken out by the United States and by the plaintiffs, and the judgment having been reversed for a formal defect in regard to the parties, and the case remanded, judgment was again rendered in the Circuit Court, on June 11, 1878, for the principal sum, with interest from the date of the writ, and costs. A second writ of error was sued out by the United States, and, afterwards, one by the plaintiffs, and the judgment of the Circuit Court was ordered to be affirmed. See *United States* v. *Curtis*, 100 U. S. 119. The plaintiffs, having paid this judgment, demanded of the defendant one twentieth part of the sum, together

with one twentieth part of the interest and costs of suit which they had been compelled to pay. They also demanded one twentieth part of the expenses of the litigation, but the latter demand is not here pressed, and need not be considered. The defendant has paid a sum, without thereby conceding any liability, a little more than equal to one twentieth part of the principal sum of the deficit, but not sufficient to cover his proportion of the interest and costs, if liable therefor.

He contends that he is under no liability; that he was entitled to notice of the suit; that, having received none, he is not responsible for the judgment recovered against the plaintiffs. But that which he agreed to pay was one twentieth of that which the plaintiffs should be compelled to pay; and if, acting in good faith, and with due diligence to protect themselves and thus the defendant, they were forced to pay the deficit of Holman, with interest and legal costs, he has not on this account any just ground of objection.

The defendant further argues, that under the plaintiffs' bond there could have been no legal default and legal compulsion on the plaintiffs to pay the deficit until demand had been made on Holman or his representatives, or on the plaintiffs, before bringing suit against them; that, by consenting to a default in the suit against them, they thus waived a legal defence. The plaintiffs, on being sued, took legal counsel, and were advised that there was no defence to the suit. On their motion, the case was continued for three or four years, to enable them to make their application for relief to the Court of Claims. If it be assumed that the advice given to the plaintiffs was erroneous, and that the defence suggested might have been made, it was one entirely technical in its character, which would have operated only to defeat the suit as then brought, and would have offered no obstacle to a suit brought after proper demand. As interest was claimed by the United States from the date of Holman's default, had this claim been maintained and the technical defence suggested been unsuccessful, the result would have been that there would thus have been created an accumulation of interest upon the plaintiffs. Even, therefore, if this defence were known to them, it was the wiser course promptly to seek relief by application to the Court of Claims, instead of interposing

this defence. It is not to be supposed that delay for this purpose would have been granted, had it been known that the plaintiffs sought to rely on such a defence. This defence was not however known to the plaintiffs, having consulted counsel, and having been informed that none existed. Whatever the case might be, had there been a good defence on the merits to the claim against them, their failure to interpose a purely technical defence should not prevent their recovery. It could not have been ruled, as matter of law, that the plaintiffs were bound to make this technical defence, and that, even if unknown to them, the fact that it was not made would prevent their recovery.

The defendant further contends that, even if liable for his proportion of the principal sum, unreasonable delay was made by the plaintiffs, and thus interest was accumulated and cost incurred which he should not be compelled to pay. That the defendant should not be made to pay the expense of an unnecessary accumulation of interest by neglect of the plaintiffs, or want of due diligence in bringing the suit against them to judgment, is just. But it cannot be said, on the facts before us, that the delay occasioned by the appeal to the Court of Claims was of this character. On the contrary, the appeal would appear to have been properly made, although the decision was adverse. It was only there that it could be determined whether the loss which constituted the principal part of Holman's deficit was sustained " without fault or negligence on the part of such officer," which is required before relief can be decreed. U. S. Rev. Sts. § 1062.

It is urged that at least judgment should have been offered for the amount due, with interest from the date of the writ, after the decision of the Court of Claims, and when it was first rendered against the plaintiffs, on October 2, 1876, in the Circuit Court, as the effect would have been to compel the government to accept it, and, if not, on final judgment would have given the plaintiffs an execution for costs. The Gen. Sts. of Mass. *c.* 129, §§ 62, 63, permit such an offer, and such is ordinarily its effect, although interest does not stop thereafter. Section 914 of the U. S. Rev. Sts. provides that the practice, pleadings, and forms and modes of proceeding in civil causes, (with certain

exceptions,) in the circuit and district courts, shall conform, as near as may be, to the practice, pleadings, and forms and modes of proceeding existing at the time in like causes in the courts of record of the State in which the same are held; but we are not prepared to hold that this can have any application to a suit brought by the United States against one of its delinquent officers or his sureties, far less that it can authorize a judgment against it for costs, the well-settled rule being that no judgment can be rendered against it for costs. *United States* v. *Hooe*, 3 Cranch, 73. *United States* v. *Barker*, 2 Wheat. 395. *The Antelope*, 12 Wheat. 546.

But were this otherwise, it is quite too stringent a rule to hold that the plaintiffs should have taken the peril of such an offer. The United States were pursuing them for a larger amount of interest than the plaintiffs were willing or were eventually obliged to pay, and the case could not then be finally decided, and by such an offer they should not have been compelled to deprive themselves of their opportunity, by bringing a writ of error after that of the United States had been brought, of having it determined whether more than nominal damages should be awarded against them, or whether they should be liable at all for interest. *United States* v. *Curtis, ubi supra.*

We are therefore of opinion, that it was erroneous to rule that this action could not be maintained, and that, if it appeared that the plaintiffs had conducted the litigation in good faith and with due diligence, the defendant was responsible for his proportion of the interest and legal costs they were necessarily compelled to pay in the action against them.          *New trial ordered.*

*T. H. Talbot*, for the plaintiffs.

*M. A. Blaisdell*, for the defendant.