NEW YORK COUNTY.—HON. D. G. ROLLINS, SURRO-
GATE.—December, 1884.

## WARNER *v.* KNOWER.

*In the matter of the estate of* JOHN F. GRAY, *deceased.*

An executor cannot show to himself, in his capacity as a debtor to his testator's estate, any greater favor than would be proper in the case of another debtor.

The statute, 2 R. S., 84, § 13,—providing that "the naming of any person executor in a will shall not operate as a discharge or bequest of any claim which the testator had against such executor, but such claim shall be included . . . . . in an inventory, and such executor shall be liable for the same as for so much money in his hands at the time such debt or demand becomes due," etc.,—must receive a restricted interpretation, made in view of the mischief designed to be thereby remedied : it was not its purpose to place a debtor-executor in a position more favorable than that of other debtors of the estate.

Decker v. Miller, 2 *Paige*, 149 ; Baucus v. Stover, 89 *N. Y.*, 1—followed ; King v. Talbot, 40 *N. Y.*, 76—distinguished.

At the time of testator's death, K., who was appointed executor, held moneys belonging to the former, amounting to nearly $170,000. Several months previously, the parties had made an agreement, indefinite as to time, that K. should be chargeable with interest on such moneys in his hands at the rate of four per cent., per annum. The will gave

the executors full and absolute discretion as to the form, manner and extent of any and all investments of the estate. Upon the judicial settlement of his account as executor, K. contended that he was not bound to discharge his debt immediately upon receiving letters, but was at liberty to exercise his discretion as to the time of payment. A referee reported that the executor must be treated as if principal and interest, due when he qualified, had been moneys of the estate then in his hands, which he failed to invest ; and that he was chargeable with interest at one per cent. less than the statute rate, commencing to run six months after the issue of his letters.—

*Held,* that the executor's contention must be overruled, unless the will could be construed as giving him power to make new loans of the estate funds, at four per cent., without security—which it could not ; that, however, the statutory provision declaring an executor liable for his own debt "as for so much money in his hands at the time such debt or demand becomes due," etc., had not the literal application implied by the report ; and that K. should be charged with interest on the principal of his indebtedness, at the rate of four per cent. until his qualification, and six per cent. thereafter, until he actually collected or set apart the amount of the same for the benefit of the estate.

HEARING of exceptions taken by Mary E. Warner and another, testamentary guardians of Louise Warner, one of the infant next of kin of decedent, to report of referee, to whom were referred the account, and objections thereto, of Benjamin Knower as executor of decedent's will, in proceedings for a judicial settlement. The facts appear sufficiently in the opinion.

JOHN N. WHITING, *for executor.*

GEO. H. STARR, *for exceptants.*

H. B. B. STAPLER, *special guardian.*

THE SURROGATE.—Dr. John F. Gray died June 5th, 1882, leaving a will, wherein he named Augustus G. Hull and Benjamin Knower as his executors. Letters testamentary were issued to the latter on the 15th of

August, following.    Mr. Hull has never qualified. The questions now presented for my determination arise upon exceptions to the report of the referee, to whom Mr. Knower's account, as executor, together with the objections thereto, was lately submitted by the Surrogate.

It is an undisputed fact that, several months before Dr. Gray's death, and at a time when large sums of money belonging to him were held by Mr. Knower, it was agreed that the holder should be chargeable with interest thereon at the rate of four per cent., per annum.    It appears also that, when the testator died, this indebtedness of Mr. Knower amounted to nearly $170,000.    His duty, as executor, respecting the collection of this sum and the nature and extent of his liability for interest thereon, between the date of the testator's death and the date of its actual payment into the estate, or its investment for the estate's benefit, are the most important matters here in controversy.

In one of the codicils to the testator's will are the words following: "I desire and direct that the executors of my said will shall have full and absolute discretion, as to the form and manner and extent of any and all investments of my estate." It is contended, on behalf of Mr. Knower, that, in view of the provision just quoted, he was not bound as executor to collect the amount of his indebtedness immediately upon his reception of letters testamentary, but that he was, on the contrary, at liberty to exercise his sound discretion, as to when he should insist upon its payment into the estate.    This contention was unsuc-

cessfully urged by the executor's counsel before the referee. It cannot, it seems to me, be upheld, unless the provision above quoted can be fairly construed as giving the executor discretionary authority, even after the testator's death, to make new loans of the estate funds to private individuals, at four per cent. interest, and without security.

I do not forget that the discretion, which an executor may properly exercise in making investments of trust funds, is essentially different from the discretion that he may properly exercise in temporarily continuing investments made by his testator; that, even in cases where one has given in his will no special direction as to investments, and has conferred no extraordinary powers upon his executor, the courts have, nevertheless, afforded such executor reasonable opportunity for converting the assets of the estate into investments sanctioned by law, and have held him not accountable for losses resulting from reasonable delay in effecting such conversion.

The facts of the case at bar do not, however, call for the application of any such principle. If this executor, when he entered upon his duties, had found, among the assets of the estate, an unsecured debt of a private individual other than himself, it would have been his duty, under the same circumstances, *mutatis mutandis*, as are here disclosed, to make immediate demand for its payment.

For I take it that the agreement between the decedent and Mr. Knower was revocable at the pleasure of either. The latter was at liberty, at any time, to relieve himself from the burden of interest, by sur-

rendering the principal, and the former would, at any time, upon demand, have been entitled to the return of his money. The debtor would, thereupon, have become liable for interest, at the legal rate, thenceforward until his indebtedness should be discharged.

Now, an executor cannot show to himself, in his capacity as a debtor to his testator's estate, any greater favor than he can properly show to other debtors. It is a familiar legal doctrine, well stated in Benchley v. Chapin (10 *Cush.*, 175), that, when the same person is bound to pay money in one capacity, and to recover it in another, the law presumes that he has done what it was his duty and in his power to do, and holds him chargeable, as if it had been actually done. To similar effect, see, also, Commonwealth v. Gould (118 *Mass.*, 307); Hazleton v. Valentine (113 *Mass.*, 480); Winship v. Bass (12 *Mass.*, 198); Hall v. Pratt (5 *Ohio*, 72); Norris v. Towle (54 *N. H.*, 290); Soverhill v. Suydam (2 *T. & C.*, 464); Stevens v. Gaylord (11 *Mass.*, 269).

It is upon this principle that, in localities where one's appointment as executor has not served, as it served at the common law, to absolve him from indebtedness to his testator, he has been held liable for the amount of such debt, as for so much moneys actually in his hands.

In passing adversely upon the contention of the accounting party in the present case, the referee has reported that, not only as to the moneys due the testator at the time the executor qualified, but also as to the interest thereupon, the executor must be treated precisely as if such moneys had, ever since he entered

upon his duties, been actually in his hands, and must, therefore, account for the same, with interest thereon, precisely as if, so being in his hands, he had failed to invest them, or to invest them properly for the benefit of the estate. The referee has accordingly applied, to the case at bar, the rule in King v. Talbot (40 *N. Y.*, 76), and has held that the executor is chargeable with interest, at one per cent. less than the statutory rate, for a period, commencing six months after the issue of letters testamentary.

While the referee does not expressly state the grounds upon which he bases this conclusion, it evidently rests upon his construction of a statutory provision whose correct interpretation was the subject of dispute at the trial, and has since been discussed in the argument before the Surrogate.

The words of that provision are as follows : " The naming of any person executor in a will shall not operate as a discharge or bequest of any claim which the testator had against such executor, but such claim shall be included among the credits and effects of the deceased in an inventory, and such executor shall be liable for the same as for so much money in his hands at the time such debt or demand becomes due, and he shall apply and distribute the same in the payment of debts and legacies, and among the next of kin as a part of the personal estate of the deceased " (§ 13, tit. 3, ch. 6, part 2, R. S.; 3 *Banks,* 7*th ed.*, 2295).

Now, in advance of the inquiry as to the origin of this statute, and as to the mischiefs it was designed to remedy, it seems evident, upon its face, that it

was intended, not to create a substantial distinction between the liability of a debtor-executor and that of other debtors of a decedent, but rather to assimilate the liability of one to that of the other; and that it does not undertake to declare that, under all circumstances and in all respects, and for all purposes, an executor's debt to his testator should be treated as if it were so much money actually in the executor's hands, but only that it should be so deemed for a particular purpose, and for the avoidance of a particular embarrassment. While the bearing of this statute upon the precise question under consideration seems never to have been judicially determined, there are two decisions of our Court of Appeals, distinctly recognizing that the provision above quoted should receive a restricted interpretation. In Soverhill v. Suydam (2 *T. & C.*, 464), a proceeding for the distribution of surplus moneys, it was claimed by certain judgment creditors of one who had been appointed the executor of a will of another and earlier judgment creditor, that such appointment, by virtue of the section in question, operated to extinguish the judgment that had been recovered by the testator, and the lien thereof, and to make an indebtedness represented by it as, in effect, money then in the hands of the executor. But the Supreme Court held that neither the debt of the executor nor the lien of the judgment was discharged by the appointment. MILLER, P. J., in delivering the opinion of the court, said: "It is not discharged, unless the executor applies the amount of his indebtedness in payment of claims against his debtor, in due course of administration.

If he refuses, or is unable to pay, the debt he owes the testator still exists, and may be sued for and its payment enforced, and any security held therefor may be applied to the payment of such debt."

Judge RAPALLO, who pronounced the opinion of the Court of Appeals affirming the judgment below in the case just cited, declared that the purpose of the section under consideration was the abolition of the common-law rule exonerating an executor from his indebted-ness to his testator, and that the provision, directing that the debt should be included in the inventory, and that the executor should be liable for it, as so much money, etc., was inserted for obviating the incongruity of requiring the executor to proceed against himself for the collection of such debt. In the course of his opinion, the learned Judge said : "When an executor . has, in the performance of his trust, paid out for these purposes (the payment of debts and legacies and claims of next of kin) the amount due from him to the estate, his debt and all liens on his individual property by which the debt may have been secured, will of course be discharged. But before this is done, it was not, in our judgment, the intention of the legislature, while preserving the debt, to discharge liens by which it might be secured. Subjecting the executor, as between him and those interested in the estate, to liability for his debt, as for so much money *in his hands, does not necessarily discharge a lien on real estate by which the debt may be secured. That provision merely superadds to his original obligation a liability to account, as executor, for the amount of the debt, and was intended to

facilitate the administration, and for the benefit of the estate, and not for that of the executor or of his individual creditors, who may have subsequent liens upon his property."

To similar effect is the decision in Baucus v. Stover (89 *N. Y.*, 1). " While the debt must be regarded," the court says in that case, " as money in his (the executor's) hands for the purpose of administration, ·it will not, for all purposes, stand on the same footing as if he had actually received so much money. If wholly unable to pay the money in pursuance of the order or .decree of the Surrogate, on account, of his insolvency, he cannot be attached and punished for contempt, as he could be if the money had been actually received from some other debtor."

The two cases just cited clearly establish that the statute, to which the referee seems to attach so much significance, must not receive a strict and literal interpretation; else the lien would not have been sustained in ·Soverhill v. Suydam, and it would have been held, in Baucus v. Stover, that the claim of the estate against its executor was enforceable by attachment.

That the legislature, by its enactment of the statutory provision here in question, did not intend to effect the result that the learned referee thinks it has accomplished is discovered, also, by an examination of the notes of the Revisers.  °

" The debt of an executor," they say (3 R. S., 2d ed., 640), " is now liable to creditors, and in some cases to legatees ; but, when not required for these purposes, it is discharged or belongs to the executors,

and is not to be distributed among the next of kin, unless it appear, on the face of the will, that the testator did not intend to discharge the debt. Few persons are aware of this; and, as well to avoid the disputes that arise, as to establish what is believed to be a just rule, this section is copied substantially from the laws of Maryland. Since an allowance is made to executors for their services, the reason of the old rule has ceased."

It was the avowed object of the provision in the Maryland law to abrogate the old doctrine, whereby the bare appointment of an executor worked an extinguishment of his indebtedness to his testator, and to furnish a simple method of making such indebtedness available as an asset of the estate. To do this, the Maryland statute provided that the executor should include any such claim in his list or inventory of debts due the estate, and it provided also for the enforcement of his liability in the event of his failure so to do. In case of his voluntary recognition of the claim, or of its establishment upon a trial, the statute declared that the executor should " account for the sum due in the same manner as if it were so much money in his hands " (2 Maxcy's Laws of Maryland, 479).

It clearly appears, upon examining the provisions just referred to, that it was no part of their purpose to place a debtor who chanced to be an executor in any more favorable situation than could be occupied by other debtors of the estate. It seems equally plain that such was not the purpose of our own statute.

Even at the common law, whenever, because of special circumstances, a debt due from the representative of an estate to his decedent was held to survive his appointment as such representative, the debtor seems to have been held liable, like any other debtor, for interest on the amount of his indebtedness, until that amount had been realized for the estate (Turner v. Cox, 8 *Moore's P. C. C.*, 288, 309, 315 ; Ingle v. Richards, 28 *Beav.*, 366 ; Styles v. Guy, 1 *Macn. & G.*, 422).

I can see no reason why that rule should not be adopted in the case at bar, and, therefore, hold that this executor must be charged with interest on his indebtedness, at the rate of six per cent., per annum, from the time when he received letters testamentary until he actually collected, or set apart for the benefit of the estate, the amount of such indebtedness.   He must be charged with interest at four per cent., up to the date of his qualifying as executor.   This course is countenanced by Baucus v. Stover (*supra*), and by Decker v. Miller (2 *Paige*, 149).   In the former case, the inventory disclosed a specified balance due from the executor at the time of its date.   The court held that he was chargeable with the balance due upon his debt, and with the interest thereon as so much money in his hands.

Decker v. Miller was an action by an executor to compel his fellow executor to account for a debt owed by him to the testator during his lifetime.   The Chancellor charged the defendant with interest, at the legal rate, down to the time the amount of the debt was paid into court.

With such modifications as are made necessary by the foregoing decision, the report of the referee is confirmed.