HARTFORD ACCIDENT AND INDEMNITY COMPANY *vs.*
ANDREW A. CASASSA & others.

Suffolk.    April 6, 1938. — October 4, 1938.

Present: LUMMUS, QUA, DOLAN, & COX, JJ.

*Bond*, Construction, Of indemnity.   *Surety.   Contract*, Construction,
Of indemnity, Performance and breach.   *Damages*, For breach of
contract.

Where simultaneously an association gave the Commonwealth a surety
bond for the removal from tidewater of the hulk of a boat which the
association planned to burn for a celebration, made a contract for the
extinguishment of the fire to be set on the boat and for removal of
the hulk, and took from the contractor a bond with the same surety,
which recited the giving of the first bond and that the association
desired the contractor's bond "as counter-indemnity" and was con-
ditioned on his indemnifying the association against loss which it
might suffer "by reason of having executed" the first bond, the pur-
pose of the contractor's bond was merely to shift possible loss by the
association on the first bond to him and not to insure performance of
his contract.

Findings showed that an association, which made a contract whereby
it was to purchase a boat and burn it in part for a celebration, where-
upon the contractor was to extinguish the fire and tow the hulk away,
did not commit a breach of the contract by delay in starting the fire
or in the use of combustibles, and that excessive burning of the boat
and failure to remove the hulk were due solely to fault of the contractor.

Upon abandonment by a contractor of his contract and completion
thereof by a third person but not for his benefit, neither he nor the
surety on his bond was entitled to be credited with the contract price
which would have been payable to him had he fully performed.

Where, after the giving of a surety bond by an association conditioned
on the removal of the hulk of a boat, its making of a contract for the
removal and its receipt from the contractor of a bond with the same
company as surety conditioned on his indemnifying the association
against loss which it might suffer through having executed the first
bond, the contractor failed to remove the hulk, it was *held* in a suit in
equity that the surety's right of indemnity against the association for a
sum paid the obligee of the first bond, with interest and counsel fees
incurred in disposing of the obligee's claim, was offset by the associa-
tion's right to counterclaim against the company as surety under the
second bond and that in the circumstances the surety company was
entitled to recover the same total amount from the contractor although
that amount exceeded the penal sum of the second bond.

BILL IN EQUITY, filed in the Superior Court with a trustee writ dated November 9, 1932.

The final decree was entered by order of *Walsh*, J.

*J. M. Graham*, (*J. T. Coan* with him,) for the defendants Chisholm and others.

*A. E. Whittemore*, (*L. Kaplan* with him,) for the plaintiff.

*W. P. Murray*, for the defendant Casassa.

Cox, J.    This is a bill in equity, inserted in a trustee writ, to reach and apply certain shares of stock, alleged to belong to one of the defendants, who, with the other defendants originally named in the bill, is alleged to have violated an agreement, made with the plaintiff, to indemnify it on a bond which these defendants, as principals, and the plaintiff, as surety, gave to the Commonwealth. The defendants who answered and one Cohen, who was later joined as a defendant, set up counterclaims in their answers. The case was referred to a master whose report was confirmed by interlocutory decree. A final decree was entered, giving money damages to the plaintiff and dismissing the bill as against Cohen. All parties, except Cohen, appealed from the final decree. Several of the defendants named in the writ filed no answers and there is no reference to them in any decree. The master reports that "The hearing proceeded upon the assumption that the persons who filed answers were the only respondents." The final decree seems to proceed upon the same assumption.

From the admission of the parties, and the master's report, it appears that the defendants, except Cohen, who were members of a voluntary association, the Amusement Division of the Revere Chamber of Commerce (hereinafter referred to as the division), planned to burn a vessel in the waters off Revere Beach, as a part of the "Night before the Fourth" celebration of 1929. On June 26, 1929, the following steps were taken to carry out the plan. To secure the license that is required by G. L. (Ter. Ed.) c. 91, §§ 46, 47, the division agreed in writing with the Commonwealth's department of public works to complete the burning of the hulk of the vessel by one o'clock in the

morning of July 4, and to complete the removal of the hulk from tidewater, to the satisfaction of the department and without expense to the Commonwealth, on or before September 1, 1929. The division also filed, as required by the statute (§ 47), a bond in the sum of $10,000, hereinafter referred to as the first bond, wherein the Commonwealth and the plaintiff are obligee and surety respectively, and which is conditioned upon the carrying out of all the provisions of the agreement "to remove the remains of this hulk from tide water." As a part of the transaction, the division gave the plaintiff a written agreement, indemnifying it against loss as surety on this bond. The division also entered into a written contract, hereinafter referred to as the main contract, with the defendant Cohen, whereby he was to sell and deliver to the division, at six o'clock in the afternoon of July 3, a vessel which they were to burn to the "floor of the first deck." Thereupon Cohen was to extinguish the fire and remove the hulk in conformity with State and Government regulations. As a part of Cohen's contract, he gave a bond in the sum of $10,000, hereinafter referred to as the second bond, wherein the division and the plaintiff were obligees and surety respectively. This second bond was to indemnify the division against loss by reason of the first bond having been executed.

The burning of the vessel was not completed at one o'clock in the morning but it burned to the water's edge and sank. The facilities for extinguishing the fire which Cohen provided were inadequate, and the hulk was not removed on or before September 1, 1929. Thereafter the Commonwealth removed it and brought an action against the plaintiff to recover the reasonable and proper cost of removal, which was $9,500. The division were notified and asked to defend the action, but refused to do so. The action was settled by the plaintiff by the payment of $9,000, and the Commonwealth assigned to the plaintiff all rights against the division.

The division's counterclaim is that there was a breach of the second bond given by Cohen so that if they are liable on the first bond, then the plaintiff, as surety on the second

bond, is liable to them, and they ask that the plaintiff be enjoined from prosecuting any suit or action against them on account of the indemnity agreements. The plaintiff, in answer to this, alleges that the division unwarrantably paid Cohen certain sums on account of the stipulated sum of $3,000, if he fully performed his contract, and also that Cohen's failure to perform was due to the conduct of the division in interfering with and obstructing his performance, so that the plaintiff is discharged from any liability to the division on the second bond. Cohen's counterclaim is that the division prevented performance by him of his contract and that the entire amount of payment provided therein is due. The plaintiff's position against Cohen is that, if it is enjoined from prosecuting any proceeding against the division, Cohen's liability to it should be determined.

No question is raised as to the breach of condition of the first bond or as to the discharge of the plaintiff's liability thereon by payment to the Commonwealth of a part of the reasonable cost of removing the hulk. This bond recites, so far as material, that "Whereas, the . . . [division have] agreed in writing . . . to remove from tide water all that remains of the hulk of the steamer . . . to be burned on the night of July 3, 1929 . . . and to make disposition thereof without expense to the Commonwealth. Now the condition of this obligation is such that if the . . . [division] shall carry out all the provisions of the said agreement . . . to remove the remains of this hulk from tide water then this obligation shall be void . . ." The second bond recites, so far as material, that whereas Cohen has agreed to have the vessel towed to a designated point and "to burn a portion of said boat for celebration purposes during the evening of July 3rd and to remove from tide water all that remains of the hulk" and whereas the division have given the first bond "conditioned upon the removal of said hulk from tide water, a copy of which bond is or may be attached hereto, and the present obligation is desired by the . . . [division] as counter-indemnity," the condition is that if Cohen shall indemnify the division against loss which they may suffer "by reason of having

executed . . . [the first bond], then this obligation shall be null and void . . . ."

The plaintiff contends that the interference of the division with Cohen's performance of his contract arose from two sources, (1) their use of combustibles and (2) their delay in starting the fire; that the use of combustibles was contrary to their contract with Cohen and that the delay in starting the fire was contrary to their contract with the department of public works. It also contends that, as a result, it was released from liability on the second bond.

It is to be observed that the second bond is not one which insures the performance of another contract as in the cases of *Davis* v. *Wells*, 254 Mass. 118, *Manufacturers' Finance Co.* v. *Rockwell*, 278 Mass. 502, *Union Market National Bank of Watertown* v. *Nonantum Investment Co.* 291 Mass. 439, 441, and *Merchants National Bank* v. *Stone*, 296 Mass. 243, 251. It provides indemnity against loss resulting from execution of the first bond in language which is clear and unmistakable, and it is evident that its sole purpose was to shift the ultimate responsibility under the first bond from the division to Cohen and, consequently, to his surety. *Curtis* v. *Banker*, 136 Mass. 355, 356. If there is liability under the first bond on the part of the division, nothing more appearing, this is just what the plaintiff undertook to take care of under the second bond. The reference in the second bond to the main contract is brief and, in one instance, inaccurate. It recites Cohen's agreement to have the vessel towed to a point to be designated by the division, "to burn a portion of said boat for celebration purposes . . ." and to remove from tidewater the remains of the hulk. Cohen had not agreed to burn the vessel. The bond then recites the giving of the first bond, "conditioned upon the removal of said hulk from tide water," "in order to secure a permit," and that "the present obligation is desired by the . . . [division] as counter-indemnity." Clearly the first bond must be read with the second bond, and Cohen's undertaking as principal in the second bond was to indemnify the division from loss under the first bond.

It is true that the several agreements and documents

bear the same date and are parts of the same general plan. But if we revert to the first bond, we find that the obligation, upon which the liability of the plaintiff on the second bond depends, is that of the division to "carry out all the provisions . . . [of their agreement] to remove the remains of this hulk from tide water." See *Canton Institution for Savings* v. *Murphy*, 156 Mass. 305; *Cook* v. *Finger*, 270 Mass. 102. The obligation of the plaintiff to insure performance by Cohen under the second bond is a very different thing from the insuring of Cohen's performance of his contract with the division. If full performance had been covered, this would have involved the inclusion of Cohen's agreement to sell and deliver the vessel and all of his obligations, including that of extinguishing the fire after the division had burned the vessel to the "floor of the first deck." The parties did not seek to do this. They went directly to the heart of the problem which was presented by the obligation imposed upon the division to remove the vessel from tidewater on or before September 1, 1929. We think that the main contract is not to be considered in determining the plaintiff's liability on the second bond. See *Canton Institution for Savings* v. *Murphy*, 156 Mass. 305.

The agreement of the division with the department of public works contained the express provision that the burning of the hulk was to be completed by one o'clock in the morning of July 4, in addition to the provision as to the removal of the hulk. It would have been an easy matter to have inserted in the first bond some reference to this first provision of the agreement, or, if the bond was to insure performance of the entire agreement, to have said so. We think it is clear that the first bond relates only to the removal of the hulk. This was the thing concerning which the Commonwealth was primarily interested. See G. L. (Ter. Ed.) c. 91, §§ 45, 46, 47. We do not think that a departure from the terms of the license can be said to be a material breach of the contract with Cohen, so as to discharge the surety. See *Watertown Fire Ins. Co.* v. *Simmons*, 131 Mass. 85, 86.

If we test the liability of the parties to the Cohen contract, an examination of it discloses that, aside from the division's obligation to pay $3,000 if Cohen performed completely, there is no other language involving conduct on their part except that "at six o'clock P.M., on July 3, 1929, said boat is to be turned over to . . . [the division] which . . . [are] then going to burn or cause said boat to be burned to the floor of the first deck." No restrictions whatever are imposed upon the division as to how the vessel was to be burned, except that it was to be burned to the "floor of the first deck, and thereupon the said Cohen is to extinguish the fire." Compare *Brand* v. *Sterling Motor Car Co.* 243 Mass. 303, 316. We must assume this to mean that when the vessel had burned to that point Cohen was to go about his work. Just why the parties expected the fire would burn uniformly to the floor, if they so expected, does not appear, but if oil were scattered about the vessel, as it was, this would help to produce a general combustion.

But if we assume that the references in the second bond to the main contract require that the latter be read in whole or in part in construing the bond, or that the violation of the terms of the license is to be considered, we do not think the plaintiff is helped. It is true, under this assumption, that a material breach or alteration of the main contract would discharge the surety from liability on the bond. See *Schwartz* v. *American Surety Co.* 231 Mass. 490; *Taborsak* v. *Massachusetts Bonding & Ins. Co.* 289 Mass. 8, 12–13. The only matters argued by the plaintiff in this connection are the effect of the use of combustibles by the division and their delay in starting the fire. There is nothing in the main contract that can be said to deal in any way with these two factors. If we look at the acts of the division in using combustibles and in delaying the burning, apart from any questions already discussed, we have to consider whether they were so prejudicial as to release the plaintiff from liability on the second bond. *Cambridge Savings Bank* v. *Hyde*, 131 Mass. 77, 78. Compare *Mansfield* v. *Hodgdon*, 147 Mass. 304, 307; *Leitner* v. *Foster*, 280 Mass. 128, 135–136. The contention of

the plaintiff in these respects was clearly in the master's mind.  He refers to it specifically, and then proceeds to deal with it.  As to the departure from the terms of the permit, he makes no finding against the division except to state their failure to complete the burning on time.  As to the contention generally, he places the blame and responsibility for the failure to extinguish the fire and to remove the hulk squarely upon Cohen.  He reports, "It is manifest that the intent of the Amusement Division was to produce a spectacular fire. . . . Cohen knew the purpose for which the . . . [vessel] was to be burned, saw the oil being scattered about . . ., and knew or should have known before he turned the boat over to the Amusement Division that this would produce a hot fire.  I find that the oil and other combustibles . . . accelerated the speed of burning.  Cohen also knew or should have known that as the fire progressed flaming embers would fall into the portion of the boat which was open and that the boat would in all probability burn from stem to stern once the fire had gotten started.  The duty of extinguishing the fire was upon Cohen.  I find as a fact that the means which he employed to extinguish it were inadequate. . . . I find that the control of the fire and the extent to which the . . . [vessel] was burned depended upon Cohen.  Due to inadequate facilities for extinguishing the fire which Cohen caused to be provided and to be used, the fire destroyed the vessel to a greater extent than was stipulated in the contract.  When the fire was extinguished the hulk could have then been towed away.  It was not."  The master comments upon the absence of any mention in Cohen's contract as to the hour when the burning should be started and upon the absence therein of any reference to the permit from or the contract with the Commonwealth, except that after the burning the vessel and any débris were to be removed.  "The manner of extinguishing the fire and the method to be employed rested wholly in Cohen's hands."  Compare *Watertown Fire Ins. Co.* v. *Simmons,* 131 Mass. 85.  His finding that the hulk "could have then been towed away," is read by us in connection with the terms of the license which provides, among

other things, that the division are to "tow the remains of the hulk to Salem Harbor."

Our ultimate conclusion is that Cohen was wholly at fault for failure to remove the hulk and that the division's counterclaim is good.

The plaintiff contends that, if it is not entitled to a decree against the division for the amount paid to the Commonwealth, it is entitled to the benefit of the contract between Cohen and the division in respect to the payment of $3,000 to which Cohen would have been entitled if he had completely performed his contract. That Cohen abandoned his contract is clear. No recovery on it can be had by him against the division. *Homer* v. *Shaw*, 177 Mass. 1, 5. *Smedley* v. *Walden*, 246 Mass. 393, 400, and cases cited. *Divito* v. *Uto*, 253 Mass. 239, 243. There is nothing to show that the Commonwealth removed the hulk for the purpose of completing Cohen's contract. There were no contractual relations between them. The removal of the hulk, in the circumstances, cannot enure to the benefit of Cohen or his surety. *Dolben* v. *Duncan Construction Co.* 276 Mass. 242.

The master found that, in addition to the $9,000 which was paid by the plaintiff to the Commonwealth, "there were costs and legal expenses of the surety company [plaintiff] amounting to $1611.96." The trial judge did not allow this latter sum; and, if it were not for the plaintiff's alternative claim against Cohen, this would make no practical difference, inasmuch as the division's counterclaim offsets the plaintiff's claim against them under the first bond. The division agreed to indemnify the plaintiff against all damages, loss, costs, charges and expenses "including counsel and attorneys' fees," sustained or incurred by reason of its having executed the first bond. There is nothing to show that these costs and legal expenses, which the plaintiff seeks to recover, were unreasonable or unnecessarily incurred, and we think they should be included in the amount to which the plaintiff would be entitled, were it not for the division's valid counterclaim. *Lindsey* v. *Parker*, 142 Mass. 582. *Singer Manuf. Co.* v. *Reynolds*, 168 Mass.

588, 590.  Compare *Boynton* v. *Tarbell,* 272 Mass. 142, 145; *Hooper* v. *Mayo,* 298 Mass. 411, 415.

The obligation of the defendant Cohen, who was the principal named in the second bond, which was in the penal sum of $10,000, was to indemnify and save the division from and against "all loss, costs or damages" they might suffer by reason of having executed the first bond.  We think it was error to dismiss the bill as against Cohen, and that the plaintiff, as surety on the second bond, is entitled to indemnity in the circumstances.  *Appleton* v. *Bascom,* 3 Met. 169, 171.  *Ricker* v. *Ricker,* 248 Mass. 549, 551.  See *Rice* v. *Southgate,* 16 Gray, 142; *Broadway National Bank of Chelsea* v. *Hayward,* 285 Mass. 459, 465.  Because of the first bond, the plaintiff has been required to pay the Commonwealth $9,000, upon which sum it is entitled to interest in the nature of damages, and has also incurred allowable expenses, all of which sums it is prevented from recovering from the division because of the second bond.  Under the peculiar facts of the case it results that the plaintiff has satisfied Cohen's obligation to the division and is entitled to recover against Cohen.  *Hazelton* v. *Valentine,* 113 Mass. 472, 479–481.  See *Pickard* v. *Clancy,* 225 Mass. 89, 95.  In actions brought to recover indemnity, where the right to indemnity is either implied by law or under a contract, costs, including reasonable counsel fees, which have been incurred in resisting the claim indemnified against, may be recovered.  *Curtis* v. *Banker,* 136 Mass. 355, 360.  *Sears* v. *Nahant,* 215 Mass. 234, 239.  The somewhat unusual relations of the parties in the case at bar were such that, in order to protect itself from liability on the second bond, as well as the first, the plaintiff was justified in contesting the action brought by the Commonwealth on the first bond.

The total amount for which Cohen is liable will exceed the penal sum of his bond.  The item of interest presents no difficulty.  *Bank of Brighton* v. *Smith,* 12 Allen, 243. *Brown* v. *London & Lancashire Indemnity Co.* 249 Mass. 511, 516.  We think that the allowance of the plaintiff's "costs and legal expenses" does not violate the general rule that the penal amount named in the bond limits the

amount of recovery to that sum. *Singer Manuf. Co.* v. *Reynolds,* 168 Mass. 588, 590. *Dwyer* v. *United States,* 93 Fed. 616. *Goodspeed* v. *Duby,* 131 Ore. 275, 279. See *Lindsey* v. *Parker,* 142 Mass. 582; *American Surety Co.* v. *Babb,* 74 Fed. (2d) 542, 544. 2 Sedgwick on Damages (9th ed.) § 677.

The results are that the plaintiff, in addition to the $9,000 with interest to the date of entry of final decree, is entitled to a finding for the sum expended for "costs and legal expenses"; the division's counterclaim is established in the amount found due the plaintiff; and the defendant Cohen is indebted to the plaintiff in the same amount, and his counterclaim is not established. So much of the final decree as dismisses the bill as against Cohen and orders execution to issue in favor of the plaintiff is reversed, and, as modified by what has been said, it is affirmed, with costs to the plaintiff against the defendant Cohen.

*Ordered accordingly.*