LEONARD A. BLANCHARD & another *vs.* MARY J. LOW, administratrix.

Suffolk.    March 15, 1895. — June 21, 1895.

Present: FIELD, C. J., ALLEN, MORTON, LATHROP, & BARKER, JJ.

*Recovery of Money paid under a Mistake of Fact.*

Money paid under a mistake of fact, to which the plaintiff's negligence has in no way contributed, may be recovered by him in an action of contract.

CONTRACT, to recover $660.60 received by the defendant to the plaintiffs' use.    Trial in the Superior Court, without a jury, before *Mason*, C. J., who allowed a bill of exceptions in substance as follows.

It appeared in evidence that the defendant's intestate, Benjamin Low, was the owner of a schooner whereof one McKinnon was master; that on or about February 21, 1893, McKinnon, acting for Low, proceeded to Boston with a part of a cargo of herring belonging to Low then on board the schooner, there to sell the herring if he could find a purchaser, or, if he deemed it advisable, to employ a commission merchant to sell the same, and that upon the arrival of the vessel at Boston the master went to the office of Potter and Wrightington.

The plaintiffs called as a witness one Charles W. Wrightington, a member of the firm of Potter and Wrightington, who testified that the master came to his office and offered to sell him the fish; that fifty cents a hundred was the canning price for herring at that time, and that he only bought for canning purposes; that he said he would take some of the fish at half a cent per pound; that the master told him he might have what he wanted at that price, and that it was agreed that he might send his teams to the vessel, and that whatever fish were delivered to the teams there he might have for half a cent per pound; that orders were given for his teams to be sent to the schooner, but that he knew nothing personally about the delivery of the fish; and that the captain said he thought he might get one dollar a hundred weight for some sold to pedlers and others, but that whatever were delivered to his firm they could have for fifty cents.

The plaintiffs also called as a witness H. Staples Potter, of said firm, who testified that he was present in the room at the time Wrightington had his conversation with McKinnon; that he heard Wrightington make the offer of fifty cents a hundred; that he asked Wrightington in the presence of the captain if he had made the purchase, and he said he had, and told him to tell Mayo, their superintendent, to send for them; and that he, Potter, then directed Mayo, over the telephone, within hearing of the captain, to send teams to the schooner for the herring.

Thereafter the master met the plaintiff Blanchard upon the wharf near the vessel, and employed the plaintiffs to sell said herring on commission. The captain testified that he said to Blanchard, "Do the best you can to handle them for me." He agreed to pay to the plaintiffs ten per cent of the proceeds of the sale, and in consideration thereof the plaintiffs agreed to sell and deliver the herring and guarantee payment for those sold by them, and, after paying the usual charges for wharfage and towage and deducting the commission, to remit the balance of the proceeds to Low. It appeared that five per cent was the usual commission charged for selling fish under like circumstances, and that the additional commission was charged on account of the guaranty on the part of the plaintiffs to collect the proceeds of the fish sold by them; that the plaintiffs authorized and instructed Fred Blanchard, one of their employees, to take orders for the fish, to weigh and deliver them, to collect payment at the time of delivery from pedlers and other purchasers whom he did not know to be responsible, but not to require payment at the time of delivery from purchasers of known responsibility, and to use his own judgment as to whom he should sell for cash and to whom he should give credit. It appeared from the testimony of the plaintiff Blanchard, and of McKinnon, that at the time the plaintiffs were employed to sell the cargo nothing was said to them by McKinnon about any previous sale to or conversation with Potter and Wrightington. It also appeared that all the fish were delivered in the following manner. The orders for the same were taken by Fred Blanchard, who then directed the mate of the schooner to pass up some fish; that the fish were then passed in baskets to Fred Blanchard, who weighed them, and delivered them to the purchaser.

The drivers of teams belonging to Potter and Wrightington came with the teams to the schooner, and informed Fred Blanchard that they wanted a load of herring; that thereupon Blanchard ordered the mate of the schooner to pass the fish; that the fish were then passed to Blanchard, who, after weighing them, had them put on to the teams of Potter and Wrightington, and gave to each teamster, when his wagon was full, a memorandum showing the number of pounds of fish in the wagon, written on a printed bill-head of Blanchard and Towle, the latter of whom was Blanchard's partner. The said Fred Blanchard then charged the fish to Potter and Wrightington on a slate which he had for that purpose, and that slate was afterwards given to the plaintiff Towle, who charged Potter and Wrightington on the books of his firm at the rate of one cent per pound for the fish delivered to their drivers as aforesaid. There were delivered to Potter and Wrightington in the manner aforesaid 73,400 pounds of fish; and one cent a pound was the market price of said herring, and a reasonable and fair price for the same.

It did not appear that the master was on board the vessel or anywhere about the place when the fish were delivered, or that he gave any orders to anybody about the delivery thereof, except that he told the mate to deliver the fish to the plaintiffs or their order, and there was no evidence of a delivery to Potter and Wrightington except in the manner aforesaid. It also appeared that, after all the fish were delivered, the plaintiffs settled with Low on the basis of one cent per pound for all fish delivered by them, after deducting a commission of ten per cent and paying wharfage and towage charges advanced by them.

It appeared that, some days after the settlement, the plaintiffs sent to Potter and Wrightington a bill for $734 for 73,400 pounds of fish, claimed by them to have been sold by the plaintiffs to said Potter and Wrightington; that Wrightington, of the firm of Potter and Wrightington, told the plaintiff Blanchard that he would not pay the bill because he had purchased the fish from the master of the schooner at half a cent per pound. It further appeared that at the time the fish were put upon Potter and Wrightington's teams nothing was said about the price thereof, or that they had purchased them of the master, and that the plaintiffs supposed that they were selling to Potter and Wrightington at the market price.

The defendant asked the judge to rule that, upon the evidence, the plaintiffs were not entitled to recover. The judge refused so to rule, and found as a fact that a complete sale of the fish received by Potter and Wrightington was made by the captain to Potter and Wrightington, and found for the plaintiffs ; and the defendant alleged exceptions. .

*J. J. Flaherty*, for the defendant.

*R. T. Babson*, for the plaintiffs.

MORTON, J. There was evidence tending to show that the captain had authority from the defendant's intestate to sell the fish, and that he sold to Potter and Wrightington what fish they might want at half a cent a pound. The fish were in bulk, and the quantity which Potter and Wrightington would take was uncertain, and it was necessary to weigh and separate them from the rest of the cargo. No title to any specific quantity passed therefore at the time of the bargain. *Young* v. *Austin*, 6 Pick. 280. *Merrill* v. *Hunnewell*, 13 Pick. 213. *Scudder* v. *Worster*, 11 Cush. 573. *Foster* v. *Ropes*, 111 Mass. 10. The sale was an executory one. The subsequent arrangement made with the plaintiffs on behalf of the defendant's intestate by the captain, without the knowledge or consent of Potter and Wrightington, to sell the cargo on commission, could not affect or avoid the previous contract with Potter and Wrightington ; and when they sent their teams to the vessel for fish pursuant to directions which there was evidence that the captain knew or understood, the delivery must be referred to the contract between the principals rather than to the mistaken belief on the part of the agents of the defendant's intestate that it was a sale effected through their own instrumentality. It was competent for the court to find, upon the evidence before it, that in sending the money as they did to the defendant's intestate the plaintiffs were acting under a mistake of fact, to which their own negligence had in no way contributed.

The question as to the admissibility of the evidence relating to usage has not been argued, and we treat it as waived.

*Exceptions overruled.*