## MONTGOMERY DOOR AND SASH COMPANY *vs.* ATLANTIC LUMBER COMPANY.

### SAME *vs.* SAME.

Suffolk.    March 7, 1910. — May 21, 1910.

Present: KNOWLTON, C. J., MORTON, LORING, BRALEY, & RUGG, JJ.

*Contract,* Implied in law, Of indemnity, Construction. *False Representations. Mistake. Evidence,* Extrinsic affecting writings. *Damages,* In action on contract for indemnity, Counsel fees.

Recovery, in an action for money had and received by the defendant to the plaintiff's use where it appears that the money was paid by the plaintiff to the defendant in reliance upon the truth of a false representation of fact made by the

defendant, is not barred by the fact that, although the representation was false, the defendant honestly thought it was true.

A lumber company sold lumber to a dealer who resold it, while it was in transit, to a manufacturer in another State and, for advances made to him by a bank, the dealer assigned to the bank in the same State the debt due to him from the manufacturer and both he and the bank notified the manufacturer of that fact. The assignment was valid by the law of the State where it was made. Thereafter, because of a fire in his plant, the dealer was subjected to receivership proceedings, and an attorney at law who represented the lumber company procured from the attorney for the receiver a letter which stated in substance that, "under the peculiar conditions and circumstances under which" the lumber was sold to the dealer, "it appears to me that" the lumber company was "entitled to the return of their goods or the money. I will say to you therefore, that I shall not, as attorney for the receiver, contest any action that you may bring for the preference and if a judgment preference is obtained you will be paid out of the first distribution." The attorney for the lumber company then interviewed the manufacturer, showed him the foregoing letter, represented that the assignment of the dealer to the bank was invalid because the manufacturer had not assented to it, that the dealer had been insolvent when he procured the lumber from the company and had procured it by fraud, and that the manufacturer should pay the lumber company therefor. Relying upon the representations, the manufacturer did as requested, and subsequently in an action brought in the name of the dealer for the benefit of the bank was compelled to pay the amount of the debt. The representations made by the attorney at law of the lumber company were false, although he thought they were true. *Held*, that all of the representations by the attorney at law were representations of fact, and that the manufacturer was entitled to recover from the lumber company in an action for money had and received the amount paid to it through the mutual mistake of the manufacturer and the company's attorney.

A lumber company sold lumber to a dealer who resold it to a manufacturer in another State and, for advances made to him by a bank in the same State, the dealer assigned to the bank the debt due to him from the manufacturer and both he and the bank notified the manufacturer of that fact. The assignment was valid by the law of the State where it was made. Thereafter the dealer suffered business misfortunes. An attorney at law employed by the lumber company represented to the manufacturer that the dealer had been insolvent when he bought the lumber from the company, that he had procured the lumber through fraud, that the assignment made to the bank was invalid, and that therefore the manufacturer should pay the company for the lumber. Induced by these representations, the manufacturer paid the price of the lumber to the company, and upon the manufacturer's requesting an agreement which would indemnify him against loss in making the payment, the attorney at law made with him on the company's behalf the following agreement in writing, which he represented would serve that purpose: "We will hold you harmless in respect to claims against you of the receiver of the . . . [property of the dealer] . . . to the amount of your indebtedness to them this day paid to us." Subsequently an action in the name of the dealer but for the benefit of the bank was brought against the manufacturer for the price of the lumber, and the manufacturer wrote to the company, "Whatever is done in the matter, you, of course, will stand back of us and be responsible for everything just as your . . . [attorney] . . . agreed when here." The company replied, "We beg that you will not communicate

direct in reference to any letters sent to you, but that you will forward them to us, or copies of them, that we may suggest to you what to write." The company did not defend the action for the manufacturer, and the manufacturer was compelled to pay on a judgment therein the price of the lumber, interest and costs, as well as to pay for the services of an attorney at law whom he employed and other expenses, and thereupon brought an action against the company for indemnity under the contract made with its attorney. *Held*, that the agreement was intended to be and was a contract of indemnity and should receive a liberal construction; that the letters showing the parties' own construction of it were admissible to aid in its construction, that under its terms broadly construed the manufacturer was not limited in his recovery to the event of his having to pay a judgment in an action by the receiver of the property of the dealer against him, but might recover after paying the judgment in the action in the dealer's name for the benefit of the bank, an event which both parties had in mind when the agreement was made; and *also*, that the manufacturer was not limited in his recovery to the amount which he had paid to the company, but might be indemnified for all the expense to which he had been put.

CONTRACT, the declaration as amended containing seven counts. Writ dated November 26, 1906.

The first count was for $1,899.42, alleged to be money had and received by the defendant to the use of the plaintiff. In the second count it was alleged in substance that the plaintiff had owed $1,899.42 to the Ironton Door and Manufacturing Company (hereinafter called the Ironton company) for lumber, that upon the defendant notifying the plaintiff that the Ironton company by fraud had procured from the defendant the lumber which it sold to the plaintiff and that the plaintiff should pay the defendant therefor, the plaintiff paid $1,899.42 to the defendant and the defendant agreed to repay that amount to the plaintiff if the plaintiff should be obliged to pay the Ironton company anything on account of the lumber. The third count was similar to the second, except that in the third count it was alleged further that the defendant represented to the plaintiff that both the Ironton company and the receiver of its property had agreed that the defendant might collect from the plaintiff for the lumber, and that the defendant's promise therein was alleged to be to "repay to the plaintiff all sums of money which the plaintiff might be compelled to pay to the " Ironton company " or its receiver on account of the said lumber," and it was alleged that the plaintiff paid, on a judgment of the Ironton company against it, $2,099. The fifth count was similar to the third, except that no mention was made of a receiver.

The fourth and sixth counts alleged a promise of the defendant to save the plaintiff harmless "against any claim of the receiver of the " Ironton company, and alleged that the receiver brought suit and recovered a judgment against the plaintiff which the plaintiff was required to pay. These counts failed because, as will appear hereafter, it was not the receiver that brought suit.

The seventh count, which was added by amendment after the hearing and arguments, alleged the facts as the plaintiff contended that the evidence had shown them to be, and closed as follows: " Said sum of $1,899.42 was paid by the plaintiff to the defendant wholly because of its reliance upon the representations aforesaid and each of them, and because of mistake produced by said representations and each of them, and the plaintiff would not have paid said sum or any part thereof to the defendant except for its reliance upon each and every one of said representations. Nevertheless, though often requested, the defendant has wholly failed to pay said sum or any part thereof to the plaintiff. Wherefore the defendant owes the plaintiff the amount of $1,899.42 with interest from October 4, 1904, as money had and received by the defendant to the plaintiff's use."

The case was heard by *Sanderson,* J., without a jury. The judge made the following findings of fact:

" The plaintiff in April, 1904, made a contract to purchase eight car loads of lumber of the Ironton Door & Manufacturing Company. This lumber was delivered in four shipments in June and July, 1904. . . . Seven of these car loads had been purchased of the defendant by the Ironton Door & Manufacturing Company and the price for these seven car loads after making similar deductions was $1,642.13. When each shipment was made by the Ironton Door & Manufacturing Company to the plaintiff, the Second National Bank of Ironton, Ohio, advanced to the Ironton Door & Manufacturing Company a sum of money representing the net estimated value of the invoice, and these advances were secured by an assignment of the debt for said shipments, and by notes for the amounts advanced signed by the Ironton Door & Manufacturing Company and payable to the Second National Bank. The invoice in each case was turned over to the bank with a carbon copy of an order which the Ironton Door

& Manufacturing Company sent at the same time to the plaintiff requesting the plaintiff to pay the amount of the invoice when due to the bank. At the same time the bank sent the plaintiff notices to the effect that for advances made the Ironton Door & Manufacturing Company had given it orders for the shipments respectively and requesting the plaintiff to settle with the bank. . . . The bank took these assignments and made these advances in good faith in the regular course of business.

"On September 11, 1904, the plant of the Ironton Door & Manufacturing Company was burned and this was followed by the appointment of a receiver for the company and later by bankruptcy proceedings.

"In October, 1904, the defendant through its attorney, one Wilson, represented to the plaintiff that the Ironton Door & Manufacturing Company was insolvent when it ordered the lumber, and that the lumber which the plaintiff had purchased from the Ironton Door & Manufacturing Company was the property of the defendant and that the defendant alone was entitled to payment for the same from the plaintiff. The defendant further represented to the plaintiff that the supposed assignment of the debt for the lumber from the Ironton Door & Manufacturing Company to the Second National Bank, not having been accepted by the plaintiff, did not amount to anything in law. Thereupon the plaintiff paid the defendant through its attorney $1,899.42, being the net price for said eight car loads of lumber, one of which car loads had never been owned by the defendant, and the defendant, being requested by the plaintiff to give the plaintiff an agreement which would indemnify the plaintiff against loss in making said payment, the defendant in consideration of said payment gave the plaintiff an agreement in the following form and represented that this agreement would so indemnify it. ' Montgomery, Lycoming Co., Pa., 10/4, 1904. Montgomery Door and Sash Company, Montgomery, Pa. Gentlemen : We will hold you harmless in respect to claims against you of the Receiver of the Ironton Door & Manufacturing Co. to the amount of your indebtedness to them this day paid to us in accordance with the letter of attorney for said receiver, dated Oct. 3rd, 1904. Yours truly, The Atlantic Lumber Co. by Wallace Wilson.' The plain-

tiff made said payment relying upon the defendant's said representations and believing that said agreement bound the defendant to indemnify the plaintiff against loss by reason of making said payment to the amount of said payment. The letter referred to in this agreement is a letter which said Wilson obtained from the attorney for the receiver of the Ironton Door & Manufacturing Company and delivered to the plaintiff. It is as follows: ' October 3, 1904. Mr. W. Wilson, Attorney for the Atlantic Lumber Co., My dear Sir: Under the peculiar conditions and circumstances under which your company sent its goods to the Ironton Door & Manufacturing Company, it appears to me that they are entitled to the return of their goods or the money. I will say to you therefore, that I shall not, as attorney for the receiver, contest any action that you may bring for the preference and if a judgment preference is obtained you will be paid out of the first distribution. Very respectfully, C. A. Thompson.' The plaintiff was represented in all of these dealings with said attorney [Wilson] by one Henderson, its treasurer and business manager.

" Thereafter in the United States Circuit Court for the Middle District of Pennsylvania judgment was obtained by the Ironton Door & Manufacturing Company for the use of the Second National Bank of Ironton against the plaintiff, for the price of said eight car loads of lumber with interest and costs amounting to $2,163.71, which the plaintiff paid on January 27, 1906.

" The Ironton Door & Manufacturing Company was not insolvent when it ordered the lumber, the lumber when invoiced to the plaintiff was the property of the Ironton Door & Manufacturing Company, and the Ironton company and those holding under it were entitled to the proceeds of the lumber and the statement that the assignment to the Second National Bank did not amount to anything in law, was not true.

" At the time when said money was paid by the plaintiff to the defendant, the plaintiff was indebted for said eight car loads of lumber to the Ironton Door & Manufacturing Company subject to the rights of the Second National Bank under said assignment, and the defendant had no title to said lumber either legal or equitable which it could assert either against the said Ironton

Door & Manufacturing Company or its receiver or its trustee in bankruptcy, or against the said Second National Bank.

"In making these findings as to the liability of the plaintiff the court has not considered the judgment obtained against it in the United States Circuit Court.

"The plaintiff is entitled to recover under said agreement to the amount of the indebtedness paid the defendant by the plaintiff, which was $1,899.42, with interest from January 27, 1906, the date when the plaintiff actually paid for this lumber the second time. . . . The plaintiff, after the rendering of the judgment against it in the suit in . . . Pennsylvania, in a letter of January 17, 1906, made demand upon the defendant for the payment of the amount of said judgment, together with the attorneys' fee of $150, which it had been required to pay in the defense of said action."

At the request of the plaintiff the judge made the following findings and rulings among others :

"Wilson was and was understood by Henderson to be an attorney having greater knowledge of the law than Henderson, who was not a lawyer and did not pretend to know the law, and in dealing with Wilson the plaintiff relied upon the legal knowledge which said Wilson claimed to have.

"If Wilson told Henderson that the lumber sold by the Ironton company to the Montgomery company had never been in the possession of the Ironton company but was the property of the Atlantic company and that the Atlantic company was alone entitled to payment for it, and in reliance on said statement the plaintiff paid the money, and if said statements were not true the plaintiff is entitled to recover back said money.

"At the time when said payment was made, both Henderson and Wilson supposed that there had been no valid assignment by the Ironton Door & Manufacturing Company to the bank, and except for this supposition the plaintiff would not have made said payment.

"The assignment of the bills against the Montgomery Door & Sash Company for the lumber by the Ironton Door & Manufacturing Company to the Second National Bank was a complete legal assignment at least when notice had been given thereof

to the Montgomery company, whether or not the Montgomery company had expressly indicated its assent thereto."

" The assignment of the bills for the lumber against the Montgomery company to the Second National Bank as an innocent purchaser for a valuable consideration without notice would cut off any equity that the Atlantic Lumber Company had, if any in such bills, as being the proceeds of lumber sold by the Atlantic Lumber Company to the Ironton company.

" The Ironton Door & Manufacturing Company did not obtain said lumber or any part of it from the Atlantic Lumber Company by fraud."

" Henderson understood at the time when the contract of indemnity was made that it covered loss or damage by reason of any claims which might be made by the Ironton Door & Manufacturing Company, or by persons claiming under the Ironton Door & Manufacturing Company for the price of said lumber.

" If the contract of indemnity did not in fact cover claims of the Ironton Door & Manufacturing Company, and if Henderson thought it did cover such claims and acted in reliance on this belief in paying the same, the plaintiff is entitled to recover back the money paid, if Wilson told Henderson that the contract was sufficient to protect him from all damages or if Wilson also supposed it was sufficient, or if Wilson, knowing it was not sufficient and that Henderson supposed it was, failed to disclose the fact to Henderson.

" The Montgomery Door & Sash Company duly notified the Atlantic Lumber Company of the bringing of said suit and of the proceedings therein, and called upon the said Atlantic Lumber Company to defend said action, and duly notified the defendant, the Atlantic Lumber Company, that it would look to it for reimbursement for any judgment obtained in said suit. Such notice was given on December 7, 1905, and at other times.

" The suit of the Ironton Door & Manufacturing Company for the use of the Second National Bank of Ironton was a claim of the Ironton Door & Manufacturing Company, and was within the meaning of said contract of indemnity.

" Having been given due notice and an opportunity to appear and defend the suit brought by the Ironton Door & Manufacturing Company, the defendant is bound by the judgment in said

suit and cannot now contend that the claim made in that suit was invalid."

At the request of the defendant the judge made the following findings and rulings:

" There was no intention on the part of Wilson to deceive or defraud. The plaintiff has failed to prove that Wilson knew that any of said statements were false.

" There is no evidence that the receiver brought suit or recovered judgment against the plaintiff, and therefore the plaintiff is not entitled to recover on the fourth and sixth counts of its declaration.

" The written paper is the contract of the parties."

The defendant asked for the following rulings, which, except as appears above, were refused.

" 2. There is no evidence that the Ironton Door & Manufacturing Company brought suit, recovered judgment and collected the same from the plaintiff, and therefore the plaintiff is not entitled to recover upon the first, second, third or fifth counts of its declaration.

" 2a. No suit has been brought or judgment obtained upon any claim which on September 4 the receiver held against the plaintiff, therefore the defendant's liability has not been established upon the written agreement.

" 4. The paper given by Wilson to the plaintiff will be presumed to embody the entire agreement upon which the parties wished to stand. This paper must be construed according to the natural import of its language. Collateral explanations or contemporaneous conversations will not be received to extend or qualify it.

" 5. Plaintiff's mistake of law or defendant's misrepresentation of the legal effect of known facts afford no ground of relief, especially, as in this case, there is neither allegation, proof, nor claim of fraud.

" 7. The burden is on the plaintiff to prove that on October 4 it was indebted to the Ironton Door & Manufacturing Company as alleged in each count. This burden is not sustained by proof that the Second National Bank obtained judgment.

· " 8. The judgment against the plaintiff could have been obtained by the Second National Bank, (which was named on the

record as the real plaintiff,) only upon the theory that the account had been assigned to it. The agreement provides no indemnity against a claim of the bank.

"9. The plaintiff having alleged fraudulent representations inducing a mistaken belief as to fact and law cannot be heard to rely upon honest misrepresentations resulting in a mutual mistake.

"10. A finding that Wilson did not know that the material statements made by him were false as alleged in count 7 is a complete defense to that count.

"11. There is no proof that any of the representations of Wilson set forth on page 2 of the amendment are false, or that they were made with intent to defraud, that under the circumstances Henderson was not justified in paying such a sum of money in reliance upon any of them or in reliance upon the statement alleged in said amendment to have been made by Wilson as to the meaning and legal purport of the agreement."

Rulings which the plaintiff asked for and the judge refused were as follows:

"1. On all the evidence the plaintiff is entitled to recover $1,899.42, with interest from October 4, 1904, as money had and received.

"2. On all the evidence the plaintiff is entitled to recover, under the contract of indemnity evidenced by the letter of the defendant of October 4, 1904, the sum of $2,163.71, with interest from January 27, 1906."

*H. F. Lyman,* (*J. O. Procter, Jr.,* with him,) for the plaintiff.

*J. E. Hannigan,* (*I. Fox* with him,) for the defendant.

BRALEY, J.   The very full and complete findings of fact made by the judge before whom the case was tried without a jury, having been well warranted by the evidence so far as it appears in the record, are conclusive. *American Malting Co.* v. *Souther Brewing Co.* 194 Mass. 89. It is manifest that the plaintiff paid over the money in controversy upon the material misrepresentations made to its treasurer and business manager by the defendant's counsel and agent accompanied by the written promise of reimbursement if it was subsequently called upon to repay the amount to the Ironton Door and Manufacturing Company from

which it purchased the lumber, or to the bank to whom the debt had been assigned.

The defendant contends that under the declaration the rulings upon the findings as to its liability, which were given at the plaintiff's request, were erroneous, and that its requests, so far as not granted, were wrongly refused. The fourth and sixth counts were disposed of in the defendant's favor, and the demurrer to the seventh count, although not expressly waived, has not been pressed. But even if redundant this count sets out a good cause of action for money had and received, while the fifth count expressly declares upon the promise in writing. *Woodbury* v. *Post*, 158 Mass. 140.

Nor was the plaintiff required to allege or prove that the defendant's agent, whom the judge found to have been unaware of their falsity, knew that the representations were untrue. The plaintiff was induced to act to its harm and injury by relying upon what the agent said, and the defendant cannot escape repayment upon the ground that, although the statements were unfounded, the money can be retained because at the time it believed them to be as represented. *Talbot* v. *National Bank of Commonwealth*, 129 Mass. 67. *Chatham Furnace Co.* v. *Moffatt*, 147 Mass. 403. *Nash* v. *Minnesota Title Ins. & Trust Co.* 163 Mass. 574, 580. *Adams* v. *Collins*, 196 Mass. 422, 429. *Griswold* v. *Hazard*, 141 U. S. 260. The misrepresentation, that the plaintiff was not bound by the assignment to the bank because it had not formally accepted the instrument, was not, as the defendant assumes, a mistake of law, but of fact, and is to be classed with the other statements of which it formed an important part. *Eustis Manuf. Co.* v. *Saco Brick Co.* 198 Mass. 212, 218, 219, and cases cited. The defendant never acquired any title to the proceeds of the lumber, even if the plaintiff's vendor obtained from it without payment seven of the car loads and sold and reshipped them to the plaintiff while in transit. The purchase was made in the ordinary course of business, without any intention to defraud, and while the buyer was solvent. If, by reason of the subsequent financial embarrassment of the Ironton company and the appointment of a receiver, there were equitable reasons which inclined him to admit the defendant's moral right to a return of the lumber or possibly to recover the price as a

preference, his consent is expressly limited to a suit for that purpose which for this reason he did not propose to defend.   The assignment, which had been taken in good faith and without knowledge by the assignee of the assignor's financial condition, was valid by the law of their domicil.   By receiving the order without objection, and placing it on file, the plaintiff assented to the transfer and became obligated to pay the indebtedness to the bank.   *Robbins* v. *Klein,* 60 Ohio St. 199.   *Allyn* v. *Allyn,* 154 Mass. 570.   If the defendant's agent and counsel assumed that the assignment was invalid and the plaintiff's treasurer accepted his view, it is settled that money obtained under a mutual mistake of fact, without any intention on the part of the defendant to cheat or defraud, may be recovered back as having been received to the plaintiff's use.   *Pearson* v. *Lord,* 6 Mass. 81.   *Haven* v. *Foster,* 9 Pick. 112.   *Stuart* v. *Sears,* 119 Mass. 143.   *Blanchard* v. *Low,* 164 Mass. 118.   *Cole* v. *Bates,* 186 Mass. 584, 586.   The plaintiff, moreover, would not have been barred if the mistake as to the effect and validity of the assignment had been caused by the treasurer's negligence in not taking disinterested legal advice or making further investigation. *Appleton Bank* v. *Mc Gilvray,* 4 Gray, 518, 522.   *Quimby* v. *Carr,* 7 Allen, 417, 419.   The defendant's fifth, ninth, tenth and eleventh requests were rightly refused.

It would not diminish the defendant's liability, but afford further ground for recovery, if its contention that the promise in writing did not cover the judgment which the plaintiff has been obliged to pay was sustained.   Upon proof of one, where several material misrepresentations are alleged, the action can be maintained, and the judge was satisfied that among other inducements, the plaintiff relied on the defendant's assurance that the writing protected it from loss at the suit, not only of the receiver, but of the ·bank.

But as judgment for the plaintiff was ordered without reference to any particular count, the scope and effect of the instrument remain for examination.   The benefit conferred on the defendant by the immediate payment of the money was a sufficient consideration to support the promise.   *Train* v. *Gold,* 5 Pick. 380, 384.   *Albro* v. *Merritt,* 97 Mass. 517.   It was intended to be, and was, a contract of indemnity, and should

receive a liberal construction to accomplish the purpose for which it was given. *Bird* v. *Washburn*, 10 Pick. 223, 226. *Curtis* v. *Banker*, 136 Mass. 355. If not drawn with minute accuracy to express all the terms which had been discussed, the defendant broadly undertook to secure the plaintiff against the consequences which might arise by making the payment, and it was accepted on this understanding. The debt had been contracted with the Ironton company, and although payable to the bank, the language of the contract includes suits brought by the creditor, as well as by the receiver in its name, to recover the debt. *Hayward* v. *Leeson*, 176 Mass. 310, 325. To exclude from the terms of indemnity the contingency, that the bank might claim the money, of which both parties were aware, would deprive the plaintiff of the full protection which the defendant, unless guilty of fraud, intended to provide. The evidence of the contemporaneous understanding and the construction which the parties put upon its terms, as shown by their correspondence,* were admissible to aid in the construction of the contract. *Smith* v. *Vose & Sons Piano Co.* 194 Mass. 193.

It having been correctly ruled, that the contract covered the enforcement of the debt by suit in the name of the assignor for the benefit of the bank, which was brought and prosecuted to judgment, the judge properly declined to give the defendant's remaining requests, and we discover no error of law in the rulings in favor of the plaintiff, to which the defendant excepted.

---

* It appeared in evidence that on or about October 15, 1904, demand was made by the Ironton Door and Manufacturing Company on the plaintiff for the price of the lumber, and thereupon, on that date, the Montgomery Door and Sash Company wrote to the Atlantic Lumber Company as follows : " In reference to the Ironton matter, will state that we understand these people have gone into bankruptcy, and now they claim this lumber was positively assigned to the Second National Bank at the time of shipment. The lumber was not billed to us by the bank, of course, but on the bill-heads of the Ironton Door and Manufacturing Company. Whatever is done in the matter, you, of course, will stand back of us and be responsible for everything just as your Mr. Wilson agreed when here. We hope, however, we will not have any trouble in the matter." To this the Atlantic Lumber Company replied on October 19, 1904, as follows : " In reference to the Ironton matter, we beg that you will not communicate direct in reference to any letters sent to you, but that you will forward them to us, or copies of them, that we may suggest to you what to write."

The plaintiff's exceptions relate only to the measure of damages, and the trial judge limited the defendant's liability to the amount it received, with interest from the date when the plaintiff was compelled to pay the judgment.   But the words, " to the amount of your indebtedness to them this day paid to ·us," does not narrow the general tenor of the agreement which as we have said was intended to provide full indemnity.   It is immaterial that the debt was merged in the judgment.   Under either count the claim is for reimbursement, and the plaintiff's damages must be measured by the loss actually sustained, which includes interest, and legal costs and expenses.   *Clarke* v. *Moies*, 11 Gray, 133. *Curtis* v. *Banker*, 136 Mass. 355.   *Valentine* v. *Wheeler*, 122 Mass. 566, 568.   *Westfield* v. *Mayo*, 122 Mass. 100, 107.   *Berry* v. *Ingalls*, 199 Mass. 77, 80.   The defendant, although seasonably notified of the pendency of the action and requested to assume the defense, and also that the plaintiff, if obliged to pay the judgment, would look to it for full satisfaction, made no reply and failed to appear.   In going on and defending the suit the plaintiff is not shown to have acted unreasonably, or for the purpose of enhancing damages, and the defendant is estopped by the notice and its conduct from contesting the validity of the judgment. It consequently is liable for the amount which the plaintiff has been obliged to pay, with interest from the date of payment, and also for reasonable counsel fees necessarily incurred in the litigation.   *Fish* v. *Dana*, 10 Mass. 46.   *Train* v. *Gold*, 5 Pick. 380. *Milford* v. *Holbrook*, 9 Allen, 17.   *Westfield* v. *Mayo*, 122 Mass. 100.   *Richstein* v. *Welch*, 197 Mass. 224, 230.

While the defendant's exceptions must be overruled, the plaintiff's exceptions because of this error must be sustained, but the new trial is to be confined to the assessment of damages only, from which the amount paid by the defendant since the present action was begun, may be deducted.

*So ordered.*