GOLD BRAND CONFECTIONERY, INC. *vs.* CHARLES W. DIMICK,
trustee.

Suffolk.    May 14, 19, 1931. — September 9, 1931.

Present: RUGG, C.J., CROSBY, PIERCE, CARROLL, WAIT, SANDERSON, &
FIELD, JJ.

*Contract,* Implied.    *Mistake.    Landlord and Tenant.    Words,* "Market
rates."

A lease provided that the lessor might supply electricity to the lessee
"at market rates."    The lessor so supplied electricity from his own
generating plant for about five and one half years, rendering monthly
bills which the lessee paid.    At the trial of an action thereafter com-
menced by the lessee against the lessor to recover sums paid by the
plaintiff to the defendant in excess of the market rate, there was evi-
dence that the rates charged by the defendant throughout such period
were much higher than the fair market rate;    that the defendant did
not know what such rate was and made no inquiry about it;    that
he made inquiry as to what others were charging for power;    that his
charges were based in part on what the power cost him;    and that the
plaintiff did not know what the market rate was until the end of such
period.    *Held,* that

 (1) The fact of overpayment by the plaintiff warranted an inference
that the plaintiff was acting under a mistake as to the amount due;

(2) The evidence warranted a finding that there was a mutual
mistake of fact by the parties concerning the market rate during the
five and one half years;

(3) The plaintiff could not properly be said to have been negligent
in failing to discover sooner that he had been overcharged:    he had a
right to rely upon the defendant's agreement in the lease to charge
market rates, upon the assumption that the defendant had knowledge
of the market rates for the power furnished and upon statements of
rates in the defendant's bills, which could have been found to be
representations of fact and not merely expressions of opinion or
judgment;

(4) The plaintiff was not a mere volunteer in making the payments
to the defendant;

 (5) There was no sound reason why the defendant should not be
required to return the excess payments to the plaintiff;    and a verdict
for the plaintiff was warranted.

CONTRACT.    Writ dated January 21, 1928.

The action was tried in the Superior Court before *Keating,*
J.    Material evidence is stated in the opinion.    The judge

denied a motion by the defendant that a verdict be ordered in his favor. There was a verdict for the plaintiff in the sum of $12,154.81. The defendant alleged exceptions.

The case was argued at the sitting of the Court in May, 1931, before *Crosby, Pierce, Carroll, Wait, & Field,* JJ., and afterwards was submitted on briefs to *Rugg,* C.J., and *Sanderson,* J.

*R. B. Heavens,* for the defendant.

*W. Flaherty,* for the plaintiff, submitted a brief.

CROSBY, J. This is an action of contract in two counts to recover certain sums in excess of the agreed price for electricity during a period of years, which the plaintiff alleges were paid by it to the defendant. The jury returned a verdict for the plaintiff. The case is here on the denial of the defendant's motion for a directed verdict.

The plaintiff, a candy manufacturer, was a tenant of the defendant of premises in Boston under two leases, the terms of which extended through the years 1922 to 1929, inclusive. Both leases were drawn by the defendant and each contained the following provision: "The lessor reserves the right to supply steam and electricity used by lessee in said premises and to charge for the same at market rates." The defendant owned two buildings and maintained a steam and electric generating plant in one of its buildings from which he supplied steam and electricity to his tenants, including the plaintiff, and to others in the vicinity. At times power purchased by the defendant from the Edison Electric Illuminating Company was supplied to the plaintiff. The defendant charged the plaintiff for electricity prices ranging from eight and one half cents to eleven cents per kilowatt hour, and rendered monthly bills therefor from January 1, 1922, to August 1, 1927; these bills were paid by the plaintiff when due.

There was evidence from which it could be found that the fair market rates for electric power consumed by the plaintiff were as follows: "For 1923, four and one half cents per kilowatt hour; for 1924, four and one half cents per kilowatt hour for the lower monthly consumption and three and one half cents per kilowatt hour for the higher; for 1925 . . .

the same as for 1924; for 1926 . . . four and one half cents per kilowatt hour for the lower monthly consumption and three cents . . . for the higher; . . . for 1927 . . . three and one half cents per kilowatt hour for the lower monthly consumption and three cents . . . for the higher; and that the higher the monthly consumption the lower the rate.''

The defendant testified that in charging the plaintiff for electricity he at all times followed the flat rate of the Edison Electric Illuminating Company; that that company during the period in question allowed discounts for quantity consumption of power, but that he did not allow such discounts because on account of the service rendered he did not feel he could afford to; that the service included having a man at the plant at all times to attend to anything required to be done in case of an emergency; that for such special service he paid $170 a month; that if anything happened to his service he had an auxiliary service by connection with the Edison company which was available for his customers; that the electricity furnished the plaintiff and his other customers was the same as he purchased from the Edison company; that he did not take any steps to ascertain what that company was charging for the kind of service he was furnishing the plaintiff, and did not know that other persons doing a business similar to that of the plaintiff were paying less; that he did not know what the market rate was on the kind of power he was furnishing, and made no inquiry about it; that he found out what other men were charging for power by inquiring of the Bowker Torre Estate, and that the final charge to the plaintiff was based in part upon what the power cost him; that if he charged the plaintiff more than the fair market rate he was mistaken in making such charge. The plaintiff's treasurer, however, testified that he was not aware of the market rates, or of the Edison company's rate for electric power and current, until some time in the summer of 1927; that as soon as he became aware of it he told the defendant that the plaintiff was paying too much, and the defendant said it was paying the Edison rates, which the witness denied. This witness also testified that he asked the defendant why a demand meter was not

installed, and the defendant replied that the plaintiff would be worse off with such a meter; that the witness replied he would be satisfied so long as he knew what he was paying for; that the defendant said he would take it up with his estate, but no demand meter was available for his company up to February, 1928. There was expert testimony respecting the market rates for the power supplied to the plaintiff during the period in question. There is no dispute as to the number of kilowatt hours of power consumed by the plaintiff monthly and charged for by the defendant during the period.

Market rate means the rate at which a commodity is commonly sold.

The motion for a directed verdict was properly denied since the jury could have found that the payments were made under a mutual mistake of fact. *Appleton Bank* v. *McGilvray*, 4 Gray, 518, 522. *Quimby* v. *Carr*, 7 Allen, 417. *Stuart* v. *Sears*, 119 Mass. 143. *Blanchard* v. *Low*, 164 Mass. 118. *Moors* v. *Bird*, 190 Mass. 400, 408. *Montgomery Door & Sash Co.* v. *Atlantic Lumber Co.* 206 Mass. 144, 155. *Perry* v. *Athens*, 256 Mass. 191.

The defendant contends that there is no evidence that the plaintiff acted under a mistake in making the payments. Intentional overpayment could be found to be so uncommon that the jury, on the basis of human experience, could infer from the fact of overpayment that the plaintiff was acting under a mistake as to the amount due. The mistake was one of fact and not of opinion or judgment. There was evidence as to the market rates, and from that evidence the jury might have found the damages.

The plaintiff cannot be accused of negligence in failing to discover what the market rates were at the time it paid the amounts requested. The defendant cannot properly contend that the plaintiff was guilty of negligence in not discovering the error before it made the payments: there was merely a failure to discover an error which the defendant had made. *Quimby* v. *Carr*, 7 Allen, 417. The cases cited by the defendant are not in conflict with the result here reached. *Rosenfeld* v. *Boston Mutual Life Ins. Co.* 222 Mass. 284, is distinguishable in its facts from the case at bar, as the pay-

ments there were made by the plaintiff voluntarily with full knowledge of the facts. In *Alton* v. *First National Bank of Webster*, 157 Mass. 341, it was said at page 344, ". . . the defendant had a right to assume that the plaintiff relied wholly on his own means of information," an assumption that the defendant in the present case had no right to make since the plaintiff might reasonably rely on the supposition that the defendant was making the charges in accordance with the contract.

Upon the evidence the jury were warranted in finding that neither the plaintiff nor the defendant knew the market rates of power; that they were in fact much less than the rates charged by the defendant; that the only testimony as to the market rates was that of witnesses called by the plaintiff, and that at no time were the market rates greater than those testified to by the plaintiff's witnesses; that the plaintiff paid much more than it would have paid had its officers not relied upon the defendant's monthly bills purporting to state the market rates, and by which it was induced to make the payments; that there was a mutual mistake of fact of the parties concerning the market rates, which the plaintiff did not discover until the summer of 1927; and that the defendant's bills were representations of fact as to the market rates and not merely expressions of opinion or judgment.

The plaintiff had the right to rely upon the defendant's agreement in the leases to charge market rates, and it is not precluded from recovery because it did not make inquiry as to the rate for electric power which was manufactured and sold by the defendant and purchased by the plaintiff to be used in connection with its business, and not for resale. As the leases were drawn by the defendant, the plaintiff had a right to rely, to a certain extent, upon the assumption that the defendant had knowledge of the market rates for the power furnished, of which the plaintiff was ignorant. The jury could have found that the plaintiff believed that the charges appearing on the bills rendered by the defendant correctly represented the market rates; that the defendant by a mistake on his part as to the market rates sent bills to

the plaintiff for amounts much in excess of those rates, and that the plaintiff paid them under the mistaken belief that the charges made represented market rates. Upon such findings the plaintiff would be entitled to recover the difference between the amounts paid and the market rates during the period in question. *Haven* v. *Foster*, 9 Pick. 111, 129. *Blanchard* v. *Low*, 164 Mass. 118. *First National Bank of Minneapolis* v. *City National Bank of Holyoke*, 182 Mass. 130, 134. *Moors* v. *Bird*, 190 Mass. 400. *Long* v. *Athol*, 196 Mass. 497. *Montgomery Door & Sash Co.* v. *Atlantic Lumber Co.* 206 Mass. 144. *Flynn* v. *Colbert*, 251 Mass. 489, 492.

Upon the facts which could have been found from the evidence, the plaintiff could not be charged with negligence in failing to discover the mistake before it paid the bills.

The cases relied on by the defendant are distinguishable in their facts from the present case. In view of what has been said, it is plain that the contention of the defendant that the plaintiff was a pure volunteer in making the payments cannot be sustained. As the evidence amply warranted a finding that the defendant charged and the plaintiff paid during the period sums much in excess of the market rate provided for in the leases, there is no sound ground upon which it can be held that the defendant should not be required to return to the plaintiff such excess payments as found by the jury. The plaintiff is entitled to recover on the ground of mutual mistake; it is therefore unnecessary to consider the question of fraud argued by the plaintiff.

The statute of limitations is pleaded in the defendant's answer. This ground of defence is not argued in the defendant's brief. It is sufficient to say that it does not appear from the record that the verdict includes any payments made by the plaintiff more than six years before the date of the writ.

As the defendant's motion for a directed verdict was rightly denied, the entry must be

*Exceptions overruled.*