Estes, J.
The plaintiff seeks to recover the sum of $2623.11 and interest in an action for money had and received. The answer is general denial and payment. The trial court made findings of facts in the following language:
“The defendant was indebted to the Granite Trust Co. in the sum of $2430. This sum was evidenced by three notes of the defendant. The note in the sum of $1450 was due November 7, 1934, another note in the sum of $800 was due November 9,1934 and the remaining note in the sum of $180 was due at a later date.
“The notes of $1450 and $800' were collateral notes and the defendant had pledged with the bank certain of his securities” to secure said notes. The $180 note was secured to the hank by a conditional bill of sale on an automobile owned by the defendant.
*211 “On Nov. 5, 1934, the defendant called at the bank and advised the bank that he wished his obligations, totaling $2430, to be liquidated. The defendant went over his list of the pledged securities with, the chief note teller of the bank and chose the particular securities to be sold. The securities picked out to be sold were sufficient in amount to pay off the indebtedness and also to leave an amount over and.above.
“The defendant instructed the chief note teller of the bank to have these securities delivered to his stock broker, the Elmer H. Bright & Go., at their Quincy office in the Granite Trust Building and that the bank was to receive the proceeds of the sale from Bright and then to retain sufficient to discharge the defendant’s indebtedness and to pay the balance over to him.
“The defendant at this time advised the bank that he had notified Elmer H. Bright & Go. about the sale of his stocks, and he wanted to deliver the stock personally to Bright but the bank refused to allow him to do so.
“On Nov. 5,1934, a note teller of the bank delivered the said securities to Bright & Co., obtained a.written receipt for them running to the bank (Exhibit 1) and instructed the manager of the Quincy office.of Bright & Co. to send the proceeds of-the sale to the bank. The manager agreed to do so.
“Prior to Nov. 5, 1934, the defendant and Bright & Co; had numerous stock transactions on open, account.
■ “Bright & Co. sold the securities, arid proceeds re-suiting from the sale or sales were $2623.11 and $310.18.
i i Thrcmgh. mistake on the part of Bright & Co., they turned over to the defendant on Nov. 7, 1934, $2623.11 (Check Exhibit 2). This check the defendant cashed at the National Mount Wollaston Bank in Quincy.
“On Nov. 8, 1934, the defendant called at Bright & Co; and requested a check for the balance of $310.18. Bright & Co. refused to' give him the $310.18 and advised the defendant of its error, and further advised him that they had stopped payment on their check of $2623.11. The defendant told Bright & Co. they were out of luck on that as he had already cashed the check.
“On Nov. 9, 1934, Bright & Co. turned over to the Granite Trust Co. $2623.11 (Exhibit 3) and also the balance of the proceeds of the sale of $310.18.
*212 “On Nov. 9, 1934, the defendant called at the Bank and requested the bank to turn over to him the balance of the proceeds that the bank had received from Bright & Co. after the payment by the bank to itself of the defendant’s obligations to the bank. The bank then advised the defendant that they had been trustees in an action brought by the Granite Trust Building Corp., and that the present defendant was named as defendant in said action and the bank as trustee.
“The bank paid to itself in discharge and payment of the notes, $2428.79, which included an adjustment of interest as follows: a charge of interest of $.49 on the $1450 note; and a rebate of $1.70, interest on the $180 note. This accounting left the sum of $504.50 in the hands of the bank, subject to the trustee process. The defendant then paid over to the bank $15.50 which made a total of $520 then in the bank’s hands, and instructed the bank in writing (Exhibit 6) to pay said sum to the Granite Trust Building Corp. in discharge of its action. The bank then delivered the notes hereinbefore referred to to the defendant as paid and discharged, and also redelivered the unsold securities in its hands to the defendant.
“Bright & Co. were obliged to and did pay the check (Exhibit 2) which the defendant cashed at the National Mount Wollaston Bank.
“When Bright & Co. delivered to the defendant the check (Exhibit 2) they did so under a mistaken belief that the money was due the defendant, coupled with negligence on the part of one of its employees. The defendant accepted and cashed the check (Exhibit 2) and he knew that he was neither legally nor morally entitled to the same, and he also knew that he was committing a fraud on Bright & Co.
“Bright & Co. duly assigned their claim against the defendant to the plaintiff by a written instrument dated May 16, 1935.
“I place little credit on the testimony of the defendant and the witness Sullivan called by him. ’ ’
The court found for the plaintiff in the sum of $2623.11 with interest from November 8, 1934.
*213 On the evidence most favorable to the plaintiff the findings of fact by the court were warranted. We agree with the conclusions of law. Finding for the plaintiff was justified. By accepting payment from the Granite Trust Company the defendant received a double payment which in good conscience he ought not to keep. He knew that the check sent to him was not in accord with the agreement made. See opinion of Appellate Divison of the Northern District in the case of Page vs. Elmer H. Bright et al., No. 1591 from Third District Court of Eastern Middlesex No. 3836 of 1935.
The defendant, not only took and cashed the check.sent to him by the broker, but .he received and accepted payment from the Trust Company. Equity and good conscience require him to return the proceeds of the check he received. His action, we think, amounted to obtaining money by deceit and mala.fide and can be recovered back. See Bliss vs. Thompson, 4 Mass. 488. It is well settled that “money paid by. mistake, which the party is not by law obliged to pay, under ignorance of the facts or a misapprehension of. the state of the contract on which he pays it, may be recovered back.” Peason vs. Lord, 6 Mass. 81. Bond vs. Hays, 12 Mass. 34. Lazell vs. Miller, 15 Mass. 207. It is no' defense to an action to recover back money paid under a mistake of fact that the mistake was caused by the negligence of the plaintiff. Appleton Bank vs. McGilvray et ali, 4 Gray 518. Quimby vs. Carr, 7 Allen 417. See also Montgomery Co. vs. Atlantic Lumber Co., 206 Mass. 144 at 155. See also Attleboro Trust Co. vs. Johnson et al., 282 Mass. 463.
The plaintiff’s assignor was not an intermeddler.
We are of the opinion that the payment to the defendant was a mistake of fact, and although, if as contended by the defendant, it was coupled with a mistake of law, the right to recover it back is not prejudiced
*214 The payment to the defendant was in fact a payment to the wrong person. The defendant committed a fraud in taking payment a second time from the Trust Company.
In good conscience he should not retain the payment made to him. See Com. vs. Haupt, 10 Allen 38, Talbot vs. National Bank of Commerce, 129 Mass. 67, Trecy vs. Jefts, 149 Mass. 211, Blanchard vs. Low, 164 Mass. 118, First National Bank vs. City National Bank, 182 Mass. 130.
We have examined the eases cited by the defendant in support of his contentions. They are either not in point or distinguishable. Indeed some support the plaintiff’s action. See Devlin vs. Houghton, 202 Mass. 75. Hancock vs. Franklin Ins. Co., 114 Mass. 155. Newell vs. Hadley, 206 Mass. 335 at 442.
We think the broker was liable to the Trust Company, . and that the check was paid to the defendant through a mistake of fact by an employee of the broker. The defendant cashed the check given him and then fraudulently received the benefit of the payment to the Trust Company. In no case cited by the defendant, or which we have been able to find, has a defendant been allowed to take advantage of a double payment as in the case at bar. Cases like Rosenfeld vs. Boston Mutual Life Ins. Co., 222 Mass. 284 have no application to the facts disclosed here.
We have considered all matters argued by the defendant, as well as his cited cases, and all requests for rulings. We also have considered the admission and exclusion of evidence objected to by the defendant. No good purpose will be served by a detailed discussion of them.
We find no prejudicial error in any of the rulings either on requests or evidence.
The motion to amend the plaintiff’s declaration was within the sound judicial discretion of the trial court. It should be allowed.
*215 ' We do not think the plaintiff’s motion for double costs should be allowed and it is denied.
The report should be dismissed.
So ordered.